# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT NASHVILLE

### JULY SESSION, 1997

FILED

February 19, 1999

Cecil W. Crowson
Appellate Court Clerk

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | **C.C.A. NO. 01C01-9806-CC-00174** |
| Appellee, | ) | |
| | ) | |
| | ) | **MARION COUNTY** |
| **VS.** | ) | |
| | ) | **HON. THOMAS W. GRAHAM** |
| **CHARLES HAMLIN,** | ) | **JUDGE** |
| | ) | |
| Appellant. | ) | **(Direct Appeal - First Degree Murder;** |
| | ) | **Voluntary Manslaughter)** |

**FOR THE APPELLANT:**

WILLIAM H. ORTWEIN
Ortwein & Associates, P.C.
723 McCallie Avenue
Chattanooga, TN 37403-0016

WILLIAM C. KILLIAN
No. I Oak Avenue
Jasper, TN 37347

**FOR THE APPELLEE:**

JOHN KNOX WALKUP
Attorney General and Reporter

KAREN M. YACUZZO
Assistant Attorney General
450 James Robertson Parkway
Nashville, TN 37243

J. MICHAEL TAYLOR
District Attorney General

STEVE STRAIN
Assistant District Attorney
Jasper, TN 37347

OPINION FILED _____

AFFIRMED IN PART; AND MODIFIED IN PART; REMANDED FOR RE-SENTENCING

JERRY L. SMITH, JUDGE

# OPINION

On May 19, 1995, a Marion County jury convicted Appellant Charles Hamlin of one count of first degree murder and one count of voluntary manslaughter. On June 29, 1995, the trial court imposed concurrent sentences of life imprisonment for the first degree murder conviction and seven years and six months for the voluntary manslaughter conviction. Appellant challenges his convictions, raising the following issues:

1) whether the evidence was sufficient to support Appellant's conviction for first degree murder;
2) whether the State prevented Appellant from having a fair trial by failing to disclose exculpatory evidence;
3) whether the State engaged in prosecutorial misconduct;
4) whether the trial court erred when it failed to examine the State's file for any undisclosed exculpatory material;
5) whether the trial court erred when it allowed a witness for the State to testify about the effects of methamphetamine use; and
6) whether the trial court erred when it ruled that a gun and a boot could not be admitted into evidence.

After a review of the record, we affirm the judgment of the trial court in part, modify the conviction of first degree murder to second degree murder and remand this case to the trial court for re-sentencing on the conviction of second degree murder.

## I. FACTS

Clay Haynes testified that on the morning of February 19, 1994, Glenn Wallace, Jr., yelled at him for waving to his wife, Sandy Wallace. A short time later, Haynes drove to his father's home, placed two guns in his truck, and drove to the home of Glenn Wallace, Jr. When he arrived, Haynes picked up one of his

guns, got out of his truck, and challenged Glenn Wallace, Jr., to a fight. When he saw that Glenn Wallace, Jr., was unarmed, Haynes put his gun back in his truck and then he and Glenn Wallace, Jr., began fighting. As Haynes began beating Glenn Wallace, Jr., Glenn Wallace, Sr., arrived and told Haynes to stop. Haynes then heard a gunshot and he saw Glenn Wallace, Sr., fall to the ground. Haynes heard some more gunshots, saw Glenn Wallace, Jr., lying on the ground, and saw Appellant standing a few feet away. At this point, Haynes fled the scene in his truck.

Christy Haynes testified that she was at her grandfather's house when her father, Clay Haynes, took two guns out of the house and put them in his truck. Clay Haynes then told Christy Haynes that he was upset over something that Glenn Wallace, Jr., had done earlier that morning. When Clay Haynes drove away, Christy Haynes called Appellant and told him that she was worried about her father because he was taking some guns with him to confront Glenn Wallace, Jr. She asked Appellant to make sure that nothing happened to her father, and Appellant assured her that her father would be safe.

Appellant testified that he was working on a truck in his yard when he heard his daughter, Sandy Wallace, yell for him to help her remove her children from the home of Glenn Wallace, Jr. Appellant then walked over to Glenn Wallace, Jr.'s home and saw Glenn Wallace, Jr., fighting with Clay Haynes. At this point, Glenn Wallace, Sr., approached Appellant and told him to leave because the fight was not his concern. Appellant testified that he then shot Glenn Wallace, Sr., when he pointed his gun at Appellant and threatened to kill him. Appellant also testified that he shot Glenn Wallace, Jr., when he yelled and

began running in his direction. Appellant admitted that Glenn Wallace, Jr., did not have any weapons in his hand when Appellant shot him. Appellant testified that he carried a loaded gun with him at all times.

Appellant was convicted of voluntary manslaughter for the killing of Glenn Wallace, Sr., and first degree murder for the killing of Glenn Wallace, Jr.

## II. SUFFICIENCY OF THE EVIDENCE

Appellant contends that the evidence was insufficient to support his conviction for the first degree murder of Glenn Wallace, Jr. Specifically, Appellant contends that the evidence was insufficient because there was no proof that the killing was committed with premeditation and deliberation. We agree.

When an appellant challenges the sufficiency of the evidence, this Court is obliged to review that challenge according to certain well-settled principles. A verdict of guilty by the jury, approved by the trial judge, accredits the testimony of the State's witnesses and resolves all conflicts in the testimony in favor of the State. State v. Cazes, 875 S.W.2d 253, 259 (Tenn. 1994). Although an accused is originally cloaked with a presumption of innocence, a jury verdict removes this presumption and replaces it with one of guilt. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). Hence, on appeal, the burden of proof rests with Appellant to demonstrate the insufficiency of the convicting evidence. Id. On appeal, "the [S]tate is entitled to the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." Id. Where the sufficiency of the evidence is contested on appeal, the relevant question for

the reviewing court is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979). In conducting our evaluation of the convicting evidence, this Court is precluded from reweighing or reconsidering the evidence. State v. Morgan, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996). Moreover, this Court may not substitute its own inferences "for those drawn by the trier of fact from circumstantial evidence." Id. at 779. Finally, Rule 13(e) of the Tennessee Rules of Appellate Procedure provides, "findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact beyond a reasonable doubt."

When Glenn Wallace, Jr., was killed in 1994, Tennessee's first degree murder statute provided that "[f]irst degree murder is: [a]n intentional, premeditated and deliberate killing of another." Tenn. Code Ann. § 39-13-202 (1993).[1] Premeditation requires a showing of a previously formed design or intent to kill. State v. West, 844 S.W.2d 144, 147 (Tenn. 1992). Deliberation requires that the offense be committed with cool purpose, free of the passions of the moment. Id. Deliberation also requires "some period of reflection, during which the mind is free from the influence of excitement." State v. Brown, 836 S.W.2d 530, 538 (Tenn. 1992). Premeditation and deliberation are determinations for the jury and may be inferred from the manner and circumstances of the killing. State v. Bordis, 905 S.W.2d 214, 222 (Tenn. Crim. App. 1995). However, a jury may not engage in speculation. Id.

---

[1]A 1995 amendment eliminated deliberation as an element of first degree murder. See Tenn. Code Ann. § 39-13-202(a)(1) (Supp. 1998) ("First degree murder is: A premeditated and intentional killing of another.").

This Court has previously recognized the nature of proof which must be presented before a jury may properly infer either deliberation or premeditation:

> (1) facts about how and what the defendant did prior to the actual killing which show he was engaged in activity directed toward the killing, that is, planning activity;
> (2) facts about the defendant's prior relationship and conduct with the victim from which motive may be inferred; and
> (3) facts about the nature of the killing from which it may be inferred that the manner of killing was so particular and exacting that the defendant must have intentionally killed according to a preconceived design.

State v. Schafer, 973 S.W.2d 269, 273 (Tenn. Crim. App. 1997) (citing State v. Gentry, 881 S.W.2d 1, 4–5 (Tenn. Crim. App. 1993)).

In this case, the State failed to introduce any evidence establishing the elements of premeditation and deliberation. First, there was absolutely no evidence that Appellant had planned to kill Glenn Wallace, Jr., or that he engaged in any activity to further that plan. There was also no proof that Appellant killed with a "cool purpose" or that he had any time between his decision to kill and the act of killing during which he could reflect on his decision. The State's only argument on appeal is that the jury could have inferred that after he received the telephone call from Christy Haynes about the fight between Clay Haynes and Glenn Wallace, Jr., Appellant dispassionately went to the scene of the fight for the purpose of killing Glenn Wallace, Jr. While this theory may have been true, it remains only a theory because the State failed to support it with evidence. While the jury may have speculated that the State's theory was true, speculation is not a substitute for proof. West, 844 S.W.2d at 148.

In addition, the State failed to introduce any evidence about Appellant's relationship with Glenn Wallace, Jr., that established a motive for the killing.

Although there was some evidence that Appellant's daughter and Glenn Wallace, Jr., had been experiencing some marital difficulties, there was no evidence that Appellant himself had experienced any problems with Glenn Wallace, Jr. Further, the State did not introduce any facts about the nature of the killing from which the jury could have inferred that Appellant had intentionally killed according to a preconceived design. In fact, none of the State's witnesses testified that they had even seen the actual killing of Glenn Wallace, Jr., they only testified that they heard gunshots and then saw Glenn Wallace, Jr., lying on the ground and Appellant standing nearby. Indeed, the only evidence presented by the State about the nature of the killing was evidence that Glenn Wallace, Jr., had died from a single gunshot wound to the head. This evidence does not establish either premeditation or deliberation in any way.

"The law in Tennessee has long recognized that once the homicide has been established, it is presumed to be murder in the second degree. The state bears the burden of proof on the issue of premeditation and deliberation sufficient to elevate the offense to first-degree murder." Brown, 836 S.W.2d at 543 (citation omitted). In this case, the State has simply failed to meet this burden and the presumption of second degree murder is therefore unrebutted. There is however, ample evidence in the record to establish that Appellant knowingly shot and killed Glenn Wallace, Jr., without the adequate provocation required to reduce the conviction to voluntary manslaughter.[2] Accordingly, we modify Appellant's conviction to second degree murder and we remand this case to the trial court for resentencing.

---

[2]"Voluntary manslaughter is the intentional or knowing killing of another in a state of passion produced by adequate provocation sufficient to lead a reasonable person to act in an irrational manner." Tenn. Code Ann. § 39-13-211(a) (1997).

## III. SUPPRESSION OF EVIDENCE

Appellant contends that he did not receive a fair trial because the State suppressed exculpatory evidence. Specifically, Appellant claims that the State withheld four witness statements and a lab report that were favorable to his defense.

In Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), the United States Supreme Court held that the prosecution has a constitutional duty to furnish the accused with exculpatory evidence pertaining to either the accused's guilt or innocence and the potential punishment that may be imposed. Failure to reveal exculpatory evidence violates due process where the evidence is material either to guilt or punishment, irrespective of good faith or bad faith of the prosecution. Id. 373 U.S. at 87, 83 S. Ct. at 1196–97. The prosecution must also disclose evidence which may be used by the defense to impeach a witness. Giglio v. United States, 405 U.S. 150, 154–55, 92 S. Ct. 763, 766, 31 L .Ed. 2d 104 (1972); Workman v. State, 868 S.W.2d 705, 709 (Tenn. Crim. App. 1993).

Before a reviewing court may find a due process violation under Brady, all of the following four prerequisites must be satisfied:

> 1) The defendant must have requested the information (unless the evidence is obviously exculpatory, in which case the State is bound to release the information whether requested or not);
> 2) The State must have suppressed the information;
> 3) The information must have been favorable to the accused; and
> 4) The information must have been material.

State v. Evans, 838 S.W.2d 185 (Tenn. 1992). In Kyles v. Whitley, 514 U.S. 419, 434, 115 S. Ct. 1555, 1566, 131 L. Ed. 2d 490 (1995), the United States Supreme Court stated that in determining whether information is material, "[t]he question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence."

### A. Witness Statements

Appellant contends that the State violated Brady when it failed to disclose the pre-trial statements of four witnesses. We disagree.

First, Appellant contends that the State violated Brady when it failed to disclose the pre-trial statement of William Rapier. However, Appellant has failed to identify any part of the record that indicates that Rapier made any such statement, that the State possessed the statement, or that it was the least bit exculpatory. Indeed, the trial court specifically found that there was no proof that the State ever had any statement from Rapier that it failed to disclose.

Second, Appellant contends that the State also violated Brady when it failed to disclose the pre-trial statements of Joyce Davis and Tony Wallace, Jr.[3] However, Appellant concedes that the State provided him with these statements during trial. This Court has previously stated that "[i]f previously undisclosed evidence is disclosed during trial, then no Brady violation occurs unless prejudice

---

[3]The record indicates that both of these witnesses gave pre-trial statements in which they admitted that they had initially failed to tell the police that Tony Wallace, Jr., had taken a gun from the crime scene and hidden its existence from investigators.

results from the delayed disclosure." State v. Jim Inman, No. 03C01-9201-CR-00020, 1993 WL 483321, at *9 (Tenn. Crim. App., Knoxville, Nov. 23, 1993) (citing United States v. Word, 806 F.2d 658, 665 (6th Cir. 1986)). Appellant has failed to indicate anything that he could or would have done differently if he had known about these statements before trial. Indeed, the record indicates that Appellant's counsel reviewed each statement and thoroughly cross-examined both witnesses about their pre-trial statements. Thus, Appellant has not shown that he was prejudiced by disclosure of these statements during trial as opposed to disclosure before trial.

Finally, Appellant contends that the State violated Brady when it failed to disclose a pre-trial statement of Sandy Wallace in which she mentioned the existence of another witness, Sherry Dixson, about whom Appellant had no previous knowledge. Appellant is correct that the general rule is that the prosecution has "a duty to disclose the names and addresses of witnesses who could exonerate the accused, corroborate the accused's position in asserting his innocence, or possessed favorable information that would have enabled defense counsel to conduct further and possibly fruitful investigation." State v. Marshall, 845 S.W.2d 228, 233 (Tenn. Crim. App. 1992). However, "[t]he prosecution is not required to disclose information that the accused already possesses or is able to obtain." Id. "When exculpatory evidence is equally available to the prosecution and the accused, the accused 'must bear the responsibility of [his] failure to seek its discovery.'" Id. (citation omitted). In this case, the information contained in Sandy Wallace's statement was equally available to both parties. Indeed, Sandy Wallace is Appellant's daughter and she testified as a defense witness at trial. There is absolutely no indication that had Appellant asked his

daughter whether she knew of any other witnesses, she would have refused to disclose the name of Sherry Dixson. Further, the record indicates that Sherry Dixson lived in the neighborhood where the killings took place. Thus, Appellant could easily have identified her as a possible witness and asked her whether she had seen or heard anything on the day of the killings. In short, because this information was equally available to both Appellant and the State, Appellant "must bear the responsibility of [his] failure to seek its discovery." Id.

## B. Lab Report

Appellant contends that he did not receive a fair trial because the State suppressed a lab report of tests performed on the shirts that Glenn Wallace, Sr., was wearing when he was killed. We disagree.

Although the sequence of events concerning the lab reports is somewhat unclear, it appears that the trial court originally imposed a deadline of July 31, 1994, for the State to provide Appellant with results of tests preformed on the victims. At that time, the State notified Appellant and the court that it could not predict when the Tennessee Bureau of Investigation would complete its testing and thus, it could not guarantee disclosure of the reports by a certain date.

On February 1, 1995, the T.B.I. reported the results of its tests on the body of Glenn Wallace, Sr. The results indicated that there was gunshot residue on his hands and that he "could have fired, handled, or [been] near a gun when it fired." These results were included in a stipulation that was read to the jury.

On March 8, 1995, the State notified Appellant and the court that it had submitted Glenn Wallace, Sr.'s shirts for gunshot residue testing. The State indicated that it had not submitted the shirts earlier because it had not known that they were in the possession of the local sheriff's office. Appellant and the court both agreed that the State had not intentionally withheld the evidence, and the court informed Appellant that he could request a continuance if he needed additional time to review the lab results when they were released. The T.B.I. released its report on May 3, 1995. The test results indicated that there was gunshot residue on both the shirt and undershirt of Glenn Wallace, Sr., but because of the absence of gunpowder or lead vapor residues, it was not possible to determine a muzzle-to-garment distance. These findings were also included in the stipulation that was read to the jury.

The T.B.I. subsequently performed additional testing on the outer shirt of Glenn Wallace, Sr. This test revealed the "presence of particles unique to gunshot primer residue." The T.B.I. agent who performed the test surmised that the primer residue had traveled with the bullet and had been deposited on the clothing upon impact. The T.B.I. reported these test results on July 7, 1995, approximately two months after Appellant's trial was completed. The State provided Appellant with a copy of the report as soon as it received it.

In its order denying Appellant's motion for a new trial, the trial court found that the State's failure to provide Appellant with this third lab report before trial did not violate Brady. The trial court found that the State had not suppressed either Glenn Wallace, Sr.'s shirts or the results of tests performed on those shirts. The trial court also found that, even assuming that the State had suppressed this

-12-

evidence, there had been no showing that the evidence was either exculpatory or material under the standards of Kyles. The trial court found that the evidence in the third lab report was not material because evidence that there was gunshot residue on the shirt of Glenn Wallace, Sr., was completely consistent with the lab report that had been read to the jury which indicated that there was gunshot residue on the hands of Glenn Wallace, Sr. Thus, the trial court found that there was no new evidence in the third lab report that supported Appellant's claim of self defense.

"The findings of fact and conclusions of law made by the trial court after an evidentiary hearing are afforded the weight of a jury verdict; this Court will not set aside the judgment of the trial court unless the evidence contained in the record preponderates against its findings." State v. Dick, 872 S.W.2d 938, 943 (Tenn. Crim. App. 1993) (citation omitted). Appellant has failed to identify anything in the record that preponderates against the trial court's findings. We agree with the trial court that the absence of the evidence contained in the third lab report did not deprive Appellant of "a trial resulting in a verdict worthy of confidence." Kyles, 514 U.S. at 434, 115 S. Ct. at 1566. This issue has no merit.

## IV. PROSECUTORIAL MISCONDUCT

Appellant contends that the State engaged in prosecutorial misconduct by withholding the pre-trial statements of Joyce Davis and Tony Wallace, Jr., and the T.B.I. lab report of July 7, 1995. We disagree.

This Court has stated that in order to prevail on a claim that prosecutorial misconduct denied the defendant of a fair trial, the defendant is required to show that the misconduct was so improper that it "affected the verdict to his detriment." State v. Gray, 960 S.W.2d 598, 609 (Tenn. Crim. App. 1997) (citation omitted). "In reviewing an allegation of improper conduct, this Court should consider several factors including the intent of the prosecutor, the curative measures which were undertaken by the court, the improper conduct viewed in context and in light of the facts and circumstances of the case, the cumulative effect of the [improper conduct] with any other errors in the record, and the relative strength or weakness of the case." Id. (citation omitted).

In this case, Appellant has simply failed to meet his burden of showing that he was prejudiced by the alleged misconduct. As previously discussed, the State disclosed the statements of Joyce Davis and Tony Wallace, Jr., to Appellant at trial and Appellant's counsel vigorously cross-examined both witnesses about the statements. In addition, Appellant was not prejudiced by the failure of the State to disclose the third T.B.I. lab report before trial because the report contained no exculpatory evidence that was not already before the jury. This issue is without merit.

## V.  FAILURE TO INSPECT THE STATE'S FILE

Appellant contends that the trial court erred when it failed to perform an in camera inspection of the State's file to determine whether it contained any undisclosed exculpatory material. Appellant also claims that the trial court erred when it failed to have the file sealed and preserved for appeal. We disagree.

The record indicates that on June 23, 1995, one month after completion of the trial, Appellant filed a motion asking the court to order the State to submit its file for inspection. Although the trial court apparently denied this motion, the record does not contain an order to that effect. Appellant then claimed in his amended motion for a new trial that the trial court erred in denying his inspection motion. Following a hearing on the motion for a new trial, the trial court issued an order which stated that in regard to Appellant's request that the court inspect the State's file, Appellant "was not entitled to such extraordinary relief and [he had] presented no authority for that relief." Although the record contains a portion of the hearing on the motion for a new trial, it does not contain the portion that addressed this issue. Therefore, it is not possible for this Court to consider the arguments of counsel, any evidence presented, or the reasoning of the trial court. "Absent the necessary relevant material in the record an appellate court cannot consider the merits of an issue." State v. Ballard, 855 S.W.2d 557, 561 (Tenn. 1993) (citing Tenn. R. App. P. 24(b). Appellant has failed to properly preserve this issue for appeal.

However, it appears that even if this issue had not been waived, Appellant would still not be entitled to relief. In State v. Caughron, 855 S.W.2d 526, 540–41 (Tenn. 1993), the Tennessee Supreme Court held that a trial court had not abused its discretion when it refused to conduct an in camera inspection of the State's file because the defendant had not asked the court to inspect any particular piece of evidence and there had been no proof that the State had committed any Brady violations. Similarly, there is no proof that the State violated its Brady duties in this case. In addition, rather than asking the trial court to inspect a specific piece of evidence, Appellant likewise asked the trial court to

search the entire file for any exculpatory evidence that might be in it.  Under these circumstances, the trial court did not abuse its discretion when it declined to inspect the State's file and seal the file for appellate review.  This issue has no merit.

## VI.  TESTIMONY ABOUT THE EFFECTS OF METHAMPHETAMINE USE

Appellant contends that the trial court erred when it allowed a witness for the State to testify about the effects of methamphetamine on the human body.  However, Appellant has failed to support this contention with any argument or any citation to authority.  Thus, Appellant has waived this issue.  Tenn. Ct. Crim. App. R. 10(b).

Notwithstanding Appellant's waiver of this issue, we conclude that even on the merits, Appellant is not entitled to relief.  The record indicates that Doctor Charles Harlan testified on direct examination that Glenn Wallace, Sr., had 0.2 micrograms of methamphetamine per milliliter in his blood at the time of his death and that Glenn Wallace, Jr., had 0.1 micrograms of methamphetamine per milliliter in his blood at the time of his death.  Dr. Harlan then testified that methamphetamine is sometimes used to make a person more alert.  Appellant did not object to any of this testimony.

On cross-examination, Dr. Harlan stated that although he had never treated anyone who had taken methamphetamine, he had conducted research regarding methamphetamine's effects on the human body.  Appellant's counsel then went on to question Dr. Harlan about the physical and mental effects that

methamphetamine use could have on a person. When Dr. Harlan reiterated on re-direct examination that methamphetamine is sometimes used to make a person more alert, Appellant's counsel objected, claiming that Dr. Harlan was not qualified to make that statement.

We conclude that even if the trial court erred when it allowed Dr. Harlan to testify about the effects of methamphetamine use, it was harmless error because Appellant was not prejudiced by it. See Tenn. R. App. P. 36(b). Indeed, Dr. Harlan had already given identical testimony without objection. Further, Appellant's own expert witness, Doctor Chris Blevins, testified that people in certain professions take methamphetamine in order to remain alert. Thus, this issue has no merit.

## VII. EXCLUSION OF EVIDENCE

Appellant contends that the trial court erred when it ruled that he could not introduce Glenn Wallace, Jr.'s boot and a gun that was allegedly found in that boot into evidence.[4] Once again, however, Appellant has failed to support this contention with any argument or any citation to authority. Thus, this issue is also waived. Tenn. Ct. Crim. App. R. 10(b). In addition, despite the trial court's statement that it would allow Appellant to make on offer of proof, Appellant failed to include the gun and the boot in the record and also failed to make any offer of proof as to why they were relevant. Thus, this Court has no basis upon which to review the trial court's decision that this evidence should not be admitted

---

[4]This boot and gun were apparently found in the home of Glenn Wallace, Jr., some time after he was killed.

because it was simply not relevant to any issue in the case. "Absent the necessary relevant material in the record an appellate court cannot consider the merits of an issue." Ballard, 855 S.W.2d at 561 (citing Tenn. R. App. P. 24(b). Appellant has failed to properly preserve this issue for appeal.

## VIII. CONCLUSION

Because we hold that the evidence was insufficient to support Appellant's conviction for first degree murder, we modify his conviction to second degree murder and we remand this case to the trial court for resentencing. In all other respects, the judgment of the trial court is affirmed.


_____
JERRY L. SMITH, JUDGE


CONCUR:


_____
JOHN H. PEAY, JUDGE


_____
WILLIAM M. BARKER, SPECIAL JUDGE