**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Kenneth Eugene ALLEN,**
**Defendant–Appellant.**

No. 96–6313.

United States Court of Appeals,
Sixth Circuit.

Submitted June 18, 1998.

Decided March 2, 1999.

Paul W. Laymon, Jr., Asst. U.S. Attorney (briefed), Chattanooga, TN, for Plaintiff–Appellee.

Perry H. Piper, Deirdra J. Brown (briefed), Federal Defender Services of Eastern Tennessee, Inc., Chattanooga, TN, for Defendant–Appellant.

Before: MOORE, CLAY, and GILMAN, Circuit Judges.

CLAY, J., delivered the opinion of the court, in which MOORE, J., joined. GILMAN, J. (pp. 304–08), delivered a separate opinion concurring in part and dissenting in part.

## OPINION

CLAY, Circuit Judge.

Defendant, Kenneth Eugene Allen, appeals from the judgment entered by the district court following his conditional guilty plea to drug related crimes, wherein Defendant reserved his right under Fed.R.Crim.P. 11(a)(2) to appeal the district court's order denying his motion to suppress evidence on the basis that the search warrant was not supported by probable cause. For the reasons set forth below, we **REVERSE** the district court's order denying Defendant's motion to suppress the evidence and **REMAND** the case to the district court for further proceedings.[1]

## BACKGROUND

Defendant was indicted on March 12, 1996, in a three-count indictment charging Defendant with alleged possession with intent to distribute cocaine base in violation of 21 U.S.C. § 841 in Count One; using and carrying a firearm during the drug trafficking offense set out in Count One in violation of 18

---

1. At the outset, we note that the dissent erroneously states that our holding—that the search warrant in this case was not supported by probable cause—is based upon *United States v. Weaver,* 99 F.3d 1372 (6th Cir.1996). Although it is true that we considered *Weaver* in rendering this decision, along with other Sixth Circuit precedent, the definitive authority upon which we rely in determining that the warrant was not supported by probable cause is *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

U.S.C. § 924(c) in Count Two; and as a felon in possession of a firearm in violation of 18 U.S.C. § 922(g) in Count Three. Defendant filed a motion to suppress the evidence seized from his residence by police detectives. The evidence seized during the search consisted of 9.3 grams of crack cocaine, a set of scales, and a loaded pistol. Defendant maintained that the evidence should have been suppressed as fruits of the poisonous tree inasmuch as the search warrant was issued without probable cause. The suppression motion was referred to a magistrate judge who later issued a report and recommendation denying the motion to suppress. Specifically, the magistrate found that because "the affidavit was based upon statements of an informant whose name was provided to the issuing magistrate, the informant's reliability was attested to by the officer seeking the warrant's issuance, and the basis of the informant's knowledge was also set forth[,]" probable cause was established sufficient to issue the warrant. On May 31, 1996, the district court affirmed the magistrate's recommendation.

Thereafter, pursuant to a plea agreement in which Defendant reserved his right to appeal the district court's denial of his motion to suppress, Defendant pleaded guilty to Counts One and Two. Defendant was sentenced on September 13, 1996, to 135 months imprisonment on Count One and to 60 months imprisonment on Count Two, to be served consecutively. Defendant filed this timely notice of appeal challenging the district court's order denying Defendant's motion to suppress the evidence seized by detectives during a search of Defendant's residence on the basis that the search warrant was not based upon probable cause. Defendant's appeal was submitted to this Court to be decided on the briefs.

### Facts

Gary Lomenick, a detective with the Chattanooga Police Department Narcotics Division in Chattanooga, Tennessee, received a tip from a confidential informant—from whom Detective Lomenick had received reliable information in the past—concerning an individual known only as "Red Dog." The tip stated that three days earlier, the informant had seen Red Dog in possession of cocaine in an apartment located at 910 North Market Street. From his conversations with other detectives in the narcotics division, Detective Lomenick learned that Red Dog's identity was that of Defendant.

Acting solely on the basis of the informant's tip, Detective Lomenick had another detective in his division prepare an affidavit to submit to a magistrate in support of a search warrant for the apartment located at 910 North Market Street. In the affidavit, which was basically a form type affidavit consisting of boilerplate text that was kept on file in the police department's computer, Detective Lomenick stated as follows:

I, Gary Lomenick, a duly sworn Chattanooga Police Officer, hereby apply for a search warrant and make oath as follows:

1. I am a sworn Chattanooga Police Officer with the Narcotics Division, where I have been assigned for over 15 years, and a commissioned Special Deputy Sheriff for Hamilton County, Tennessee.

2. On the 11th day of October 1995 I Gary Lomenick received information from an informant, a responsible and credible citizen of the county and state, who I know to be a responsible and credible citizen because, I have known said informant for 5 years and said informant has given me information about individuals involved in criminal activity in the past that has proven to be reliable. Said informant's name whom I have this day disclosed to the Judge to whom this application is made, that John Doe (Alias) Red Dog who resides in or occupies and is in possession of the following described premises 910 North Market Street, apartment directly underneath carport located in Chattanooga, Hamilton County Tennessee, unlawfully has in his possession on said premises legend and/or narcotic drugs including Cocaine in violation of law made and provided in such cases.

3. On the 11th day of October 1995 said informant advised me that said informant was on the premises of the said John Doe (Alias) Red Dog located at 910 North Market Street, apartment directly underneath carport within seventy-two hours prior to

our conversation on October 11th, 1995 and while there saw Cocaine in possession of the said John Doe (Alias) Red Dog[.]

WHEREFORE, as such officer acting in performance of my duty in the premises I pray that the Court issue a warrant authorizing the search of the said John Doe (Alias) Red Dog and the premises located at 910 North Market Street, apartment directly underneath the carport, for said legend and/or narcotic drugs including Cocaine and that such search be made either by day or by night.

The affidavit provided blank lines for Detective Lomenick to fill-in at the conclusion of the warrant hearing specifying his name, the name of the issuing magistrate, and the date. Detective Lomenick presented his affidavit to Special Judge Glenn McColpin, a local practicing attorney acting for the magistrate judge that oversaw warrant applications. Detective Lomenick disclosed during the warrant hearing the name of the confidential informant who provided him with the information contained in the affidavit. Based upon this oral representation and the information contained in the affidavit, Special Judge McColpin issued a search warrant for the apartment located at 910 North Market Street.

Upon receipt of the search warrant, Detective Lomenick led a team of police officers to 910 North Market Street to execute the warrant. The officers traveled to the apartment in a police van, and when they arrived they noticed that the entrance to the apartment was at the back of the building underneath a carport. Detective Lomenick drove the van up the driveway to the carport, and the officers quickly exited the van and approached the front door of the apartment. As they approached the building, the officers noticed that the front door to the apartment was open, thus allowing them an unobstructed view through a screen door and into the home.

From this vantage point, the officers could see two people, later identified as Defendant and Sharon Brewer, standing on the front porch. When Defendant saw the officers, he rushed into the apartment and the officers quickly followed him. During the pursuit,

the officers saw Defendant throw an object into a closet in the hallway and heard a loud audible thump, as though something had hit the back wall of the closet. When the officers later searched the closet, they found a loaded pistol on the floor.

As Defendant was being pursued down the hallway of the apartment, he dropped several pieces of what was later found to be crack cocaine on the floor. The officers apprehended Defendant in the back bedroom of the apartment. When questioned by the officers, Defendant voluntarily turned over the crack cocaine he had remaining on his person. Laboratory analysis later determined that the combined weight of the crack cocaine retrieved from Defendant's person and the floor of the hallway totaled 9.3 grams.

## ANALYSIS

This case asks us to decide whether the affidavit presented to Special Judge McColpin set forth sufficient particularized facts for the judge to find a substantial basis for probable cause to issue the search warrant, and if not, whether Detective Lomenick acted in good faith reliance on the warrant in executing the search. We answer both questions in the negative.

### A. Sufficiency of the Affidavit

In reviewing a state magistrate's determination of probable cause in issuing a search warrant, this Court must determine whether, under a totality of the circumstances, "the magistrate had a substantial basis for concluding that 'a search would uncover evidence of wrongdoing.'" *United States v. Sonagere*, 30 F.3d 51, 53 (6th Cir. 1994) (quoting *Illinois v. Gates*, 462 U.S. 213, 236, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)). This court pays "'great deference'" to a magistrate's findings, which "'should not be set aside unless arbitrarily exercised.'" *United States v. Leake*, 998 F.2d 1359, 1363 (6th Cir.1993) (quoting *United States v. Pelham*, 801 F.2d 875, 877 (6th Cir.1986)) (citing *Illinois v. Gates*, 462 U.S. 213, 236, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)). Yet, "the magistrate [must] perform his 'neutral and detached' function and not serve merely as a

rubber stamp for police." *Aguilar v. Texas,* 378 U.S. 108, 111, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). To that end, "[d]eference to the [issuing] magistrate ... is not boundless." *United States v. Leon,* 468 U.S. 897, 914, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984).

The Fourth Amendment guarantees that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation." U.S. Const. amend. IV. The warrant requirement serves to interpose between the police and an individual's personal privacy an orderly procedure involving "a neutral and detached magistrate[,]" *Johnson v. United States,* 333 U.S. 10, 14, 68 S.Ct. 367, 92 L.Ed. 436 (1948), who is responsible for making an "informed and deliberate determination" on the issue of probable cause. *Aguilar,* 378 U.S. at 110, 84 S.Ct. 1509. The warrant process thus avoids allowing the determination of probable cause to rest with the "zealous" actions of the police who are "engaged in the often competitive enterprise of ferreting out crime." *Johnson,* 333 U.S. at 14, 68 S.Ct. 367.

■ In order for a magistrate to make such an informed judgment, "the affidavit presented must contain adequate supporting facts about the underlying circumstances to show that probable cause exists for the issuance of the warrant." *United States v. Weaver,* 99 F.3d 1372, 1377 (6th Cir.1996) (citing *Whiteley v. Warden,* 401 U.S. 560, 564, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971); *Nathanson v. United States,* 290 U.S. 41, 47, 54 S.Ct. 11, 78 L.Ed. 159 (1933)). Such facts "need not be based on the direct knowledge and observations of the affiant, but may also come from hearsay information supplied by an informant." 99 F.3d at 1377 (citing *Jones v. United States,* 362 U.S. 257, 269–70, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960)). However, "from whatever source, the information presented must be sufficient to allow the official to independently determine probable cause; 'his action cannot be a mere ratification of the bare conclusions of others.'" 99 F.3d at 1377 (quoting *Gates,* 462 U.S. at 239, 103 S.Ct. 2317)).

■ This Court applies the "totality of the circumstances" analysis enunciated in *Gates* to cases involving known, reliable informants. *Weaver,* 99 F.3d at 1377 (citing *United States v. Smith,* 783 F.2d 648, 650–51 (6th Cir.1986)). In *Gates,* the Court described the "totality of the circumstances" test as follows:

The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

462 U.S. at 238, 103 S.Ct. 2317. In applying this test, this Court has recognized that "two factors are critical to determining whether an affidavit based on a confidential informant's tip provides a substantial basis for finding probable cause: (1) an explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed firsthand, entitles the informant's tip to greater weight than might otherwise be the case; and (2) corroboration of the tip through the officer's independent investigative work is significant." *Weaver,* 99 F.3d at 1377 (quoting *United States v. Sonagere,* 30 F.3d 51, 53 (6th Cir.1994)) (citing *Gates,* 462 U.S. at 234, 103 S.Ct. 2317)) (internal quotation marks omitted).

■ Here, Defendant contends that the warrant was improperly issued because the affidavit was based upon "bare bones" conclusions. Relying upon this Court's analysis and holding in *Weaver,* Defendant maintains that the affidavit failed to contain the requisite particularized facts concerning the informants's reliability—particularly where the informant's tip was not supported by independent investigative police work—necessary to support a finding of probable cause. The Government, on the other hand, argues that *Weaver* is distinguishable from the instant case, and that under this Court's holdings in *United States v. Pelham,* 801 F.2d 875 (6th Cir.1986) and *United States v. Finch,* 998 F.2d 349 (6th Cir.1993), the affidavit at issue was sufficient to establish probable cause. We agree with Defendant that the affidavit at issue was insufficient to establish the requisite probable cause necessary to issue the

search warrant. However, we believe that this is true under *Weaver,* as well as under *Pelham* and *Finch,* because these opinions are consistent inasmuch as "the circumstances of each case are unique[,]" *Weaver,* 99 F.3d at 1379 (citing *Leon,* 468 U.S. at 918, 104 S.Ct. 3405), and "probable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily or even usefully, reduced to a neat set of legal rules .... [in which] '[i]nformants' tips, like all other clues and evidence ... may vary greatly in their value and reliability.'" *Weaver,* 99 F.3d at 1379 (quoting *Gates,* 462 U.S. at 232, 103 S.Ct. 2317 (citing *Adams v. Williams,* 407 U.S. 143, 147, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972))).[2] All three of these cases engaged in the appropriate analysis under the standards set forth by controlling law. The fact that different results may have been reached under similar factual situations does not indicate a departure from the proper standards that a reviewing court must employ in determining probable cause; nor does it indicate that a single case which may appear to have been decided dissimilarly constitutes an aberration. Rather, the varied results reached by reviewing courts are a product of the dynamic analytical process in which a reviewing court must engage in determining the "fluid concept" of probable cause where—"as the very name implies, we deal with probabilities." *Gates,* 462 U.S. at 231, 103 S.Ct. 2317. These probabilities "are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Id.*

The dissent criticizes the above analysis in finding it "disturbing" that the results reached in cases such as this will be as arbitrary as "the random mix of panel members that draw the case on appeal" if the determination of probable cause is viewed as a "dynamic analytical process" of a fluid concept. However, we find it disturbing for the dissent to slight Supreme Court precedent; the dissent's feigned fidelity to *Gates* goes no further than a mere expression of words— where its invocation of *Gates* is contrary to

the dissent's analysis. Simply put, the dissent rejects the application of *Gates* while professing to embrace its reasoning. For example, the dissent ignores the Supreme Court's finding that the determination of probable cause as a fluid concept "turn[s] on the assessment of probabilities in particular factual contexts," *Gates,* 462 U.S. at 232, 103 S.Ct. 2317, when it criticizes the majority for stating that similar factual situations may produce different results. The Supreme Court's painstaking efforts to note the many variables and assessments upon which the determination of probable cause depends, clearly indicates that the determination is indeed a "dynamic analytical process" turning on subtle factual shadings viewed under the totality of the circumstances. *Id.*

It is simplistic, at best, for the dissent to ignore the fact that different results can be reached by different panels without misapplying the law in instances where subtle and critical judgments are required to determine the outcome of a case. As Oliver Wendell Holmes once said, "[t]he life of the law has not been logic: it has been experience." Oliver Wendell Holmes, Jr., The Common Law 5 (Howe ed. 1963); *see also Gates,* 462 U.S. at 232, 103 S.Ct. 2317 (finding that "[r]igid legal rules are ill-suited to an area of such diversity"). Furthermore, the dissent conspicuously fails to mention that the majority later goes on to clarify its position by stating that although different panels may focus on different factual shadings and thereby reach different results, the *fundamental task* of determining whether sufficient particularized facts were presented to the magistrate to indicate that a search would uncover evidence of a wrongdoing *remains a constant. See* discussion *infra.*

In *Pelham,* the informant was initially arrested for possessing marijuana, and when questioned as to where he had obtained the marijuana, the informant gave the police the name and address of Defendant, James Pelham, at 1992 Court Avenue in Memphis, Tennessee. 801 F.2d at 876. The arresting officers handcuffed the informant, put him

---

2. To illustrate our point that the dissent is contradictory when it purports to embrace and accept *Gates* while at the same time rejecting *Weav-*

*er,* we emphasize that the *Weaver* Court quoted and relied upon *Gates* in reaching its decision.

into a police car, and drove past 1992 Court Avenue which the informant visually identified as the place where he had obtained the marijuana. *Id.* The officers then drove to the police station, and drafted an affidavit in support of a search warrant for the premises of 1992 Court Avenue. *Id.* The affidavit described the premises to be searched, set forth the belief that the defendant was in possession of marijuana on the premises, and provided the following statement in support of this belief:

> On January 8, 1995 the affiant [Swain] talked to Payton Brown who stated to the affiant that within the past twenty-four (24) hours he had been inside the above described residence of Jim Pelham and had seen Jim Pelham storing & selling Marijuana inside the aforementioned residence, the same being located in Memphis, Shelby County, Tennessee.

*Id.* The officer who wrote out the affidavit took the same to an issuing magistrate and requested a search warrant. *Id.* In doing so, the officer also verbally related additional information not contained in the affidavit, such as the fact that the informant had been arrested and had visually identified the defendant's house to the officer. *Id.* The warrant was issued; the search was conducted soon thereafter; and the results of the search uncovered approximately thirty pounds of marijuana in the defendant's home. *Id.* The defendant made a motion to suppress the evidence seized; however, the motion was denied. *Id.*

Defendant appealed the district court's denial of the motion, and on appeal this Court held that the information presented to the magistrate provided a "substantial basis for concluding that a search would uncover evidence of wrongdoing." *Pelham,* 801 F.2d at 878. The Court reasoned that because the affidavit stated that the informant had been inside the defendant's residence within the past twenty-four hours and had seen the defendant storing and selling marijuana, "[i]n a practical sense, there could hardly be more substantial evidence of the existence of the material sought and its relevance to a crime than [the informant's] direct viewing of marijuana in [the defendant's] house." The Court

went on to state that, "[w]hen a witness has seen evidence in a specific location in the immediate past, and is willing to be named in the affidavit, the 'totality of circumstances [sic]'presents a 'substantial basis' for conducting a search for that evidence. In essence, [the officer's] affidavit exhibited on its face 'the probability ... of criminal activity.'" *Id.* (citing *Spinelli v. United States,* 393 U.S. 410, 419, 89 S.Ct. 584, 21 L.Ed.2d 637, *quoted in Gates,* 462 U.S. at 235, 103 S.Ct. 2317) (footnote omitted).

In *Finch,* the defendant also claimed that the affidavit accompanying the search warrant was insufficient to support a finding of probable cause. 998 F.2d at 351. The affidavit submitted to the magistrate in support of the issuance of a search warrant stated as follows:

> [A]ffiant has talked with a reliable informant of Memphis, Shelby County, Tennessee who has given the affiant other information in the past which has been found to be true and correct, and which has resulted in several narcotic arrests and drug seizures. This reliable informant stated that within the past five (5) days of January 19, 1991, this reliable informant has been inside the above described residence and has seen the above described person storing and selling Cocaine inside this residence.

*Id.* at 352. The district court denied the defendant's motion to suppress. *Id.* Following his conviction based upon a conditional plea agreement, the defendant appealed the district court's decision to this Court claiming that there was nothing in the affidavit to indicate to the issuing judge that the substance the informant had seen in the defendant's residence was cocaine, and that the affidavit was conclusory in nature. *Id.*

This Court disagreed with the defendant's claims finding that "[a] magistrate examining this information in the required common-sense fashion could readily conclude that the informant was familiar with the appearance of controlled substances such as cocaine, and could identify them by observation." *Finch,* 998 F.2d at 352. The Court also found that the affidavit was not conclusory in nature because it provided a statement of the affi-

ants' reasons for their belief as to the existence of probable cause. *Id.*

In *Weaver*, the affidavit prepared in support of the search warrant primarily consisted of preprinted boilerplate text with a few open spaces for additional information. 99 F.3d at 1375. The affidavit described in detail the premises to be searched, stated that the informant who provided the tip was "reliable and credible" and had provided information in the past "which . . . was found to have been accurate and reliable." *Id.* The tip recounted to the magistrate was that "within the last 72 hours said informant was upon the above described premises and while thereon personally observed (Gary Weaver) having personal possession and control over a quantity of (marijuana) being held expressly for the purpose of unlawful distribution." *Id.* at 1375–76. Based upon this affidavit, the magistrate issued a warrant. *Id.* A search of the described premises was thereafter executed which uncovered a quarter-ounce of marijuana, but no other evidence of possession, distribution, or growth of marijuana on the property. *Id.* The search did, however, uncover rifles, ammunition, and other ammunition-related items left in the outbuilding, and the defendant was arrested for having these articles in his possession. *Id.* The defendant moved to suppress the evidence seized as a result of the search on the basis that the search warrant was defective for lack of probable cause. *Id.* The district court denied the motion; the defendant was convicted of unlawful possession of firearms and ammunition by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2); and appealed the district court's order denying his motion to suppress. *Id.*

Upon review, this Court agreed with the defendant that the search warrant was defective because the "bare bones" affidavit "failed to provide sufficient factual information for a finding of probable cause." *Weaver*, 99 F.3d at 1379–80. In so holding, the Court pointed to a number of deficiencies in the affidavit. For example, the Court noted that the affidavit "present[ed] no underlying factual circumstances to support the informant's knowledge regarding distribution, nor the detective's own 'belief' that these quanti-

ties of marijuana were present 'for the purpose or with the intention of unlawful possession, sale or transportation.'" *Id.* at 1378. The Court suggested that the affidavit could have provided a description "of marijuana and how it was maintained, identifying aspects of the location in the residence where the marijuana or distribution paraphernalia was seen or kept, [or] a description of [the defendant]." *Id.* at 1378 n. 4. In addition, the Court pointed to the fact that "[t]here [was] no indication in this affidavit that this informant provided reliable information in the past leading to drug-related arrests or prosecutions." *Id.* at 1379. The Court particularly considered the fact that the informant's tip was the only evidence linking the defendant to possible drug activities, and that "[the detective] undertook no substantive independent investigative actions to corroborate his informant's claims." *Id.* The Court suggested that the police officer could have placed a surveillance team at the suspected premises to look for drug activity or arranged a second controlled buy made within police observation. *Id.* Finally, the Court emphasized its concern regarding the threat of generalization that boilerplate language affidavits present where particularized facts are necessary in a supporting affidavit. *Id.* at 1381 (citing *United States v. Brown*, 49 F.3d 1162, 1175 (6th Cir.1995) (Batchelder, J. dissenting)).

As stated, although the *Pelham* and *Finch* courts reached different results than the *Weaver* court, all three panels employed the same relevant legal standard. The process undertaken by each panel was one where the facts supporting the existence of probable cause had to be balanced and weighed, and considered in relation to the arguments posed by opposing counsels that may have caused certain panels to emphasize one criterion over another. For example, the *Weaver* court noted that "[p]anels of this court have differed on the need for corroboration in situations regarding tips from known, reliable informants." *Id.* at 1379 n. 5. The *Weaver* Court compared *United States v. Smith*, 783 F.2d 648, 649 (6th Cir.1986), where a panel of this Court found that the fact that the informant's tip was corroborated was crucial in upholding the affidavit, with

*Finch*, 998 F.2d at 352, where a panel of this Court did not address the whether corroboration was necessary and instead focused on the information provided by the affiants to substantiate their belief that probable cause existed. *Weaver*, 99 F.3d at 1379 n. 5. Simply stated, although different panels may have focused on different factual shadings of each case as presented, and thereby reached different results, the fundamental task of determining whether sufficient particularized facts were presented to the magistrate to indicate that a search would uncover evidence of a wrongdoing remained a constant. *See Gates*, 462 U.S. at 231–236, 103 S.Ct. 2317.

Turning to the matter at hand, we begin by emphasizing that "[t]he security of one's privacy against arbitrary intrusion by the police—which is at the core of the Fourth Amendment—is basic to our society." *Wolf v. Colorado*, 338 U.S. 25, 27, 69 S.Ct. 1359, 93 L.Ed. 1782 (1949). With this basic premise in mind, we note that the only colorable allegation of wrongdoing in the affidavit at hand is the averment that, within seventy-two hours prior to the date of the affidavit, the informant was on the suspected premises and, while there, saw some quantity of cocaine "in possession of ... Red Dog." The affidavit does not describe the type of cocaine (crack or powder) the informant observed nor does it identify where in the premises "Red Dog" kept the cocaine. As Defendant correctly claims, the information provided in the affidavit could easily have supported an inference that the confidential informant was at Defendant's home three days prior to the search and saw Defendant snort a line of cocaine or saw a crack rock sitting on the table next to a pipe. Such an inference, in itself, would not have supported a finding of probable cause to search the apartment because the evidence of wrongdoing—cocaine—would have long since been consumed by the time the police searched the premises. *See generally* 2 WAYNE R. LaFAVE, SEARCH AND SEIZURE § 3.7(a) (3d ed.1996) (noting that where an affidavit recites only a "one-shot type of crime, such as single instance of possession or sale of some form of contraband," probable cause dwindles rather quickly with the passage of time).

In addition, the affidavit failed to provide any facts about the informant's knowledge or familiarity with the appearance of cocaine. Instead, the affidavit merely stated that the tips of "criminal activity" provided by the informant in the past have "proven to be reliable." Although we agree with the *Finch* court that in such a case a magistrate could make a common sense determination that the informant was familiar enough with the appearance of controlled substances such as cocaine sufficient to identify them by observation, *see* 998 F.2d at 352, we are not persuaded enough by this fact alone to find that the affidavit in this case was supported by the requisite particularized facts sufficient to establish probable cause. We believe this to be particularly so where Detective Lomenick failed to undertake any independent investigative work to corroborate the informant's tip. For example, Detective Lomenick did not so much as corroborate whether Defendant resided at the apartment located at 910 North Market Street, or whether the apartment so located was actually the apartment in question. *See Leake*, 998 F.2d at 1365 (finding the affiant's corroborative investigation insufficient because it fell short of that conducted in *United States v. Smith*, 783 F.2d 648, 650–51 (6th Cir.1986), where the affiant conducted an independent investigation and observed a marijuana plant growing at the suspect's home).

Furthermore, the affidavit at issue was basically a form type affidavit consisting of boilerplate text and, although we do not find this factor alone sufficient to invalidate the affidavit, we do find that this factor goes against a finding of the necessary particularized facts under the totality of the circumstances. As stated, boilerplate language in affidavits poses a threat of generalization where particularization is necessary. *See Weaver*, 99 F.3d at 1381 (citing *Brown*, 49 F.3d at 1175 (Batchelder, J., dissenting)). Although we recognize the logistical need for boilerplate forms and are not concerned with their use *per se*, we hasten to note that boilerplate language in affidavits should be not be used to circumvent or compromise the

particularized language that is necessary in an affidavit. The use of boilerplate *language*—not boilerplate *form affidavits*—is but a factor that the reviewing court should consider when determining whether particularized facts were presented under the totality of the circumstances.

Accordingly, under the totality of the circumstances, we find that the affidavit at issue was conclusory and "bare bones" in that it failed to provide sufficient factual information for a finding of probable cause because it contained only the affiant's belief that probable cause existed, which lacked particularized facts sufficient to indicate that a search "would uncover evidence of wrongdoing[,]" and was not corroborated by an independent investigation.[3] *See Gates*, 462 U.S. at 236, 103 S.Ct. 2317; *Whiteley v. Warden*, 401 U.S. 560, 564–65, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971); *United States v. Ciammitti*, 720 F.2d 927, 932 (6th Cir.1983).

## B. *Good Faith Exception*

■ The Government argues that even if the warrant was issued without a showing of probable cause, Detective Lomenick relied upon the warrant's validity in good faith, thereby raising the exception to the exclusionary rule as announced in *United States v.*

*Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). In *Leon*, the Supreme Court held that the exclusionary rule does not "bar the admission of evidence seized in reasonable, good-faith reliance on a search warrant that is subsequently held to be defective." *Id.* at 905, 104 S.Ct. 3405. However, the Court found four specific scenarios where the good faith exception was inappropriate: (1) if the issuing magistrate was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth; (2) if the issuing magistrate failed to act in a neutral and detached fashion and merely served as a rubber stamp for the police; (3) if the affidavit was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable, or where the warrant application was supported by nothing more than a bare bones affidavit; and (4) if the warrant was facially deficient in that it failed to particularize the place to be searched or the things to be seized. *Id.* at 914–15, 923, 104 S.Ct. 3405.[4]

Defendant argues that his case falls under the third scenario set forth in *Leon*; specifically, that the bare bones conclusions set forth in the affidavit rendered any reliance

---

**3.** We note in summary that although *Pelham* and *Finch* appear to reach a different result than *Weaver*, it is not because *Weaver* is a departure from the fundamental analysis used by a reviewing court in determining probable cause. Rather, the result in *Weaver* is but a function of the "fluid concept" of probable cause, and the dynamic process undertaken by a reviewing court in determining whether sufficient particularized facts were presented to a magistrate to indicate that a search would uncover evidence of wrongdoing. *See Gates*, 462 U.S. at 232–36, 103 S.Ct. 2317. As such, *Weaver* in no way overrules *Pelham* and *Finch*; however, in refusing to recognize this fact, and in disavowing the conclusion reached by the majority, the dissent's rejection is tantamount to an invitation to overrule the opinion of the Supreme Court in *Gates*. Of course, this is an invitation that the dissent does not have the authority to make, and this Court does not have the authority to accept—the dissent's call for an *en banc* review of this case is therefore ill-conceived.

**4.** In yet another mischaracterization of the majority opinion, the dissent claims that the majority's recitation to the *Leon* factors is not supported by a reading of that case. Once again, the dissent is clearly taking the majority opinion

out of context. A thorough reading of *Leon*—at the specific page numbers cited by the majority—clearly supports the majority's recitation of the four scenarios under which the so-called "good faith" exception does not apply. *See Leon*, 468 U.S. at 914–15, 923, 104 S.Ct. 3405. In fact, the dissent's quoted language from *Leon* supports the majority's interpretation, in that the third scenario clearly states that a substantial basis to support the affidavit cannot be found where the affidavit rests upon bare conclusions. *Id.* at 915, 104 S.Ct. 3405. Furthermore, the majority never claimed to be quoting directly from *Leon* in articulating the four scenarios. As such, the dissent's bold-faced accusation that, "[t]he second half of the majority's scenario, i.e., 'where the warrant application was supported by nothing more than a bare bones affidavit,' is not found in *Leon* at all, but instead comes from *Weaver*, 99 F.3d at 1380," is completely unfounded. As stated, the very language that the dissent quotes from *Leon* supports the majority's articulation. Accordingly, the dissent's "fear" that the majority's approach so broadens the third scenario as to render the good faith exception a "nullity" is without basis in fact or logic.

upon the search warrant to be objectively unreasonable. When presented with an argument concerning the third scenario outlined in *Leon,* the threshold question is one of reasonableness: whether the reliance on the validity of the warrant was objectively reasonable, that is, "whether a reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization." *Leon,* 468 U.S. at 922 n. 23, 104 S.Ct. 3405.

 Here, under an objective standard of reasonableness, we believe that Detective Lomenick should have known that the search was illegal despite the magistrate's authorization. Although Detective Lomenick possessed information from a previously reliable informant regarding possible illegal drug activity, he had little firsthand information and no personal observation of the criminal activity at issue. For example, Detective Lomenick had no prior dealings with Defendant, had no other present knowledge of Defendant and his relation to illegal drugs, did not conduct any surveillance of Defendant's residence, and possessed only third-party hearsay information that cocaine was on Defendant's premises.[5] *See Weaver,* 99 F.3d at 1380–81. We believe that a reasonably prudent officer would have made some attempt to corroborate the informant's tip in order to establish the requisite probable cause, and had Detective Lomenick done so, our outcome today may have been different. *Id.* (citing *Gates,* 462 U.S. at 242, 103 S.Ct. 2317 (citing *Aguilar,* 378 U.S. at 109 n. 1, 84 S.Ct. 1509)).

## CONCLUSION

For the above stated reasons, we **REVERSE** the district court's order denying Defendant's motion to suppress the evidence and **REMAND** the case to the district court for proceedings consistent with this opinion.

GILMAN, Circuit Judge, concurring in part and dissenting in part.

Holding that the affidavit at issue in this case was "bare bones" and unsupported by

any independent police investigation, the majority has invalidated the search warrant in question. The majority bases its conclusion on *United States v. Weaver,* 99 F.3d 1372 (6th Cir.1996), which discusses the requirements for affidavits underlying search warrants. It further concludes that no reasonable officer would have believed the search to be legal.

I believe that *Weaver* represents a change in the law from that previously expressed by this court in *United States v. Pelham,* 801 F.2d 875 (6th Cir.1986), and *United States v. Finch,* 998 F.2d 349 (6th Cir.1993). Although I agree with the majority that the affidavit in this case does not pass constitutional muster, I reach that conclusion for different reasons than those emphasized in the majority opinion. I dissent, however, because the majority has failed to apply the "good faith exception" as articulated in *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). In my opinion, the officer's reliance on the affidavit to establish probable cause for issuing the search warrant was "not entirely unreasonable," and was therefore constitutional. *See id.* at 915, 104 S.Ct. 3405. For these reasons, I respectfully dissent.

## A. Pelham, Finch, and Weaver

The majority in this case has the unenviable task of attempting to find coherence in this court's prior decisions regarding search warrants based solely on uncorroborated information received from an informant. Despite the majority's conclusion that all three of the cases in question "engaged in the appropriate analysis," I must respectfully disagree. I particularly disagree with the following portion of the majority opinion:

> The fact that different results may have been reached under similar factual situations does not indicate a departure from the proper standards that a reviewing court must employ in determining proba-

---

**5.** Because we believe that *Weaver* did not present a departure from this Court's holdings in *Pelham* and *Finch, see* discussion *supra* Part A., we disagree with the dissent's conclusion that the good-

faith exception applies in this case because the warrant was applied for and issued before *Weaver* was decided.

ble cause; nor does it indicate that a single case which may appear to have been decided dissimilarly constitutes an aberration. Rather, the varied results reached by reviewing courts are a product of the dynamic analytical process in which a reviewing court must engage in determining the "fluid concept" of probable cause ...

Contrary to the majority's logic, I find it quite disturbing that "different results may have been reached under similar factual situations ... " The rule of law demands that the *same results* should be reached under similar factual circumstances. Otherwise, neither the police nor the public are given any guidance as to what the law requires in order to obtain a valid search warrant. If it all boils down to simply "a product of the dynamic analytical process in which a reviewing court must engage in determining the 'fluid concept' of probable cause," the results will be as arbitrary as the random mix of panel members that draw the case on appeal.

This is exactly what appears to have happened in *Pelham, Finch, Weaver*, and the present case. Both *Pelham* and *Finch* sustained search warrants based on an informant's direct observation of the incriminating evidence at the premises to be searched, without any corroborating investigation by the police. In neither case did the officer's affidavit contain any significant details beyond a terse recitation of the informant's personal observations and that the informant had previously proved reliable. Furthermore, there is no question that the *Pelham* and *Finch* courts carefully considered the issue at hand. The *Pelham* court, in fact, specifically disagreed with the conclusion reached by both the magistrate judge and the district judge that the affidavit did not contain sufficient detail to establish probable cause. *See Pelham*, 801 F.2d at 878.

The facts in *Weaver* are virtually identical to *Pelham* and *Finch*, yet *Weaver* reached the opposite result by declaring the affidavit insufficient to establish probable cause. While *Weaver* cites *Pelham* several times for general legal propositions, it never discusses the facts in *Pelham*, much less tries to distinguish the case. As for *Finch*, the court in *Weaver* at least makes mention of the *Finch* facts in a

footnote, but then states that "the *Finch* court did not address whether corroboration was necessary ..." *Weaver*, 99 F.3d at 1379 n. 5. Although the statement is technically correct that the *Finch* court did not explicitly discuss the absence of corroboration, the court in *Finch* clearly considered corroboration unnecessary where the informant directly observed the illegal drugs on the defendant's premises and the affidavit contained a statement concerning the prior reliability of the informant. *See Finch*, 998 F.2d at 352 (holding that the uncorroborated affidavit was sufficient when it "provide[d] a statement of the affiants' reasons for their belief as to the existence of probable cause."). In light of the above, I agree with the comment of the district court in *United States v. Bryant*, 951 F.Supp. 674, 678 (E.D.Mich. 1997), that "*Weaver* appears to represent a departure from the less exacting review of *Finch* and the adoption of a stricter approach to the governing law."

Even under *Pelham* and *Finch*, however, I find that the affidavit in this case was insufficient to support a finding of probable cause. The affidavits in both *Pelham* and *Finch* explicitly state that the informant observed the suspect "storing and selling" narcotics. *See Pelham*, 801 F.2d at 878; *Finch*, 998 F.2d at 352. For that matter, the affidavit in *Weaver* contained similar language. *See Weaver*, 99 F.3d at 1375–76 (stating that the affiant had "personally observed (Gary Weaver) having personal possession ... of (marijuana) being held expressly for the purpose of unlawful distribution.... Consequently, affiant believes that all or some portion of the said (marijuana) still remains on the above described premises.") (substitutions in original). Such information provided probable cause to believe that the drugs would still be on the premises when the search occurred.

In contrast, the affidavit in this case simply stated that "[defendant] ... unlawfully has in his possession on said premises legend and/or narcotic drugs including Cocaine ..." and that the informant "while there saw Cocaine in possession of the said [defendant] ..." No information was provided as to quantity, storing, or selling. Thus, under the

totality of the circumstances, there was no reasonable basis to believe that a search of Allen's residence would uncover any illegal drugs. *See Illinois v. Gates*, 462 U.S. 213, 230, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) (adopting the "totality of the circumstances" test as the controlling standard in determining probable cause for search warrants). I therefore agree with the majority's conclusion that there was no probable cause to support the issuance of the search warrant in question. *See Zurcher v. The Stanford Daily*, 436 U.S. 547, 557, 98 S.Ct. 1970, 56 L.Ed.2d 525 (1978) (holding that "search warrants may be issued only by a neutral and detached judicial officer, upon a showing of probable cause—that is, reasonable grounds to believe—that criminally related objects are in the place which the warrant authorizes to be searched, at the time when the search is authorized to be conducted."); *see also Finch*, 998 F.2d at 352 ("Probable cause for the issuance of a search warrant is defined in terms of whether the affidavit sets out facts and circumstances which indicate a fair probability that evidence of a crime will be located on the premises of the proposed search."(citations and internal quotation marks omitted)).

Finally, my acknowledgment of *Gates's* "totality of the circumstances" test should serve as a clear indication that I am not, as the majority claims, either slighting Supreme Court precedent or suggesting that *Gates* should be overruled. I agree with *Gates's* statement that "probable cause is a fluid concept," 462 U.S. at 232, 103 S.Ct. 2317, but disagree with the majority's use of that phrase to permit fluctuating results based on "different factual shadings" that are so subtle as to amount to distinctions without a difference. I believe that the statement that "probable cause is a fluid concept" is best understood to mean that materially different factual situations should produce different results, not that similar factual situations may do so. Here is where the majority and I part company, because I believe that similar factual situations have indeed produced different results in *Pelham, Finch,* and *Weaver*.

## B. The Good Faith Exception

Although I agree with the majority that the search warrant was in fact defective, I cannot agree with its conclusion that Detective Lomineck lacked a good faith basis to rely on the warrant. As the majority properly states, *United States v. Leon*, 468 U.S. 897, 905, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), held that the exclusionary rule does not "bar the admission of evidence seized in reasonable, good-faith reliance on a search warrant that is subsequently held to be defective." In this regard, the majority opinion sets forth four scenarios "where the good faith exception was inappropriate." Scenario three, the one at issue in this case, is described as "(3) if the affidavit was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable, or where the warrant application was supported by nothing more than a bare bones affidavit." The majority then cites *Leon* at pages 914–15, 923, 104 S.Ct. 3405 as the source of these scenarios. A review of the cited pages, however, does not support the majority's articulation of the third scenario. At page 915, 104 S.Ct. 3405, *Leon* reads: "Third, reviewing courts will not defer to a warrant based on an affidavit that does not provide the magistrate with a substantial basis for determining the existence of probable cause."

The second half of the majority's scenario, i.e., "where the warrant application was supported by nothing more than a bare bones affidavit," is not found in *Leon* at all, but instead comes from *Weaver*, 99 F.3d at 1380. Although *Weaver* purports to quote *Leon*, the quotation is in fact cobbled together from wholly different sentences on the same page of *Leon.* The full quotation reads as follows:

> Third, reviewing courts will not defer to a warrant based on an affidavit that does not provide the magistrate with a substantial basis for determining probable cause. Sufficient information must be presented to the magistrate to allow that official to determine probable cause; his actions can not be a mere ratification of the bare conclusions of others. Even if the warrant application was supported by more than a "bare bones" affidavit, a reviewing court

may properly conclude that, notwithstanding the deference magistrates deserve, the warrant was invalid because the magistrate's probable-cause determination reflected an improper analysis of the totality of the circumstances or because the form of the warrant was improper in some respect.

*Leon,* 468 U.S. at 915, 104 S.Ct. 3405.

The language of *Weaver* gives the impression that the Supreme Court has held that the proper question is whether the affidavit was "bare bones" or not. To the contrary, I read *Leon* to say that an affidavit must simply have a "substantial basis," a term the Court did not define. In this context, "bare-bones" seems to refer to a totally conclusory statement without any supporting detail. *See Finch,* 998 F.2d at 352. I believe the correct interpretation of *Leon's* "third scenario" is that the totality of the circumstances must support the magistrate's finding that a substantial basis exists to conclude that a search will uncover evidence of wrongdoing. *See Pelham,* 801 F.2d at 878. The focus should thus be on the magistrate's finding of "substantial basis," not on whether the affidavit was "bare bones."

This interpretation is supported by the fact that the Supreme Court in *Leon* held that the police were entitled to rely on a defective warrant that was issued on the basis of an affidavit by an unproven informer who had witnessed a drug transaction some five months earlier. *See Leon,* 468 U.S. at 901, 104 S.Ct. 3405. In comparison, the affidavit in the present case is stronger than the one at issue in *Leon,* based as it was on recent information from a reliable informant. I fear that the majority's approach so broadens *Leon's* "third scenario" that it will effectively nullify the good faith exception.

Based on the facts in this case, I cannot conclude that the affidavit was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Leon,* 468 U.S. at 915, 104 S.Ct. 3405. Detective Lomineck's actions were not "entirely unreasonable." Quite to the contrary, I believe that reasonable people could disagree as to whether the affidavit was supported by probable cause. Lomineck presented a neutral magistrate with an affidavit stating that he had information about the presence of illegal drugs at a specific location from a reliable informant that was based on recent, personal observation. Furthermore, the warrant was applied for and issued prior to this court's decision in *Weaver,* making it all the more reasonable for Lomineck to have a good faith belief that the uncorroborated information supplied by the informant was sufficient under the authority *Pelham* and *Finch.* I believe that the majority's opinion is contrary to the very essence of *Leon,* which provides that when reasonable people could disagree as to the support for a magistrate's warrant, an officer may rely on it. *See Leon,* 468 U.S. at 922–23, 104 S.Ct. 3405.

Finally, I do not share the majority's critical emphasis on so-called "boilerplate." Police officers should not be expected to be skilled legal draftsman. Standard forms are a useful tool to provide officers a skeleton from which to work, and actually serve in many cases to perpetually alert officers to the legal requirements that they must meet. Although standard language in affidavits would be problematic if it purported to set forth the probable cause itself in a perfunctory manner, such is not the situation here. As discussed above, Detective Lomineck went beyond boilerplate and set out specific reasons for his belief that probable cause for the search warrant existed in this case.

In sum, I conclude that even though the affidavit in this case did not provide sufficient detail to establish probable cause, it was sufficient to meet the "good faith" exception of *Leon.* I further conclude that this court's decision in *Weaver* in effect purports to overrule our prior decisions in *Pelham* and *Finch* by eschewing "bare bones" and "boilerplate" language in warrant affidavits and by requiring independent corroboration of an informant's statements. This raises a serious problem in light of our court's policy that "[one] panel of this Court cannot overrule the decision of another panel. The prior decision remains controlling authority unless an inconsistent decision of the United States Supreme Court requires modification or this Court sitting en banc overrules the prior decision." *Salmi v. Secretary of Health &*

*Human Services,* 774 F.2d 685, 689 (6th Cir. 1985). I would therefore suggest that an *en banc* review of this case would be appropriate in order to clarify the law in this circuit regarding the necessary requirements for the issuance of a search warrant based on uncorroborated information from an informant.

For all of the reasons set forth above, I respectfully dissent.