UNITED STATES of America,
Plaintiff-Appellee,

v.

Jerry L. WORD, Defendant-Appellant.

No. 86–5109.

United States Court of Appeals,
Sixth Circuit.

Argued Sept. 29, 1986.

Decided Dec. 1, 1986.

Dale Quillen, Nashville, Tenn., Lucinda Smith (argued), for defendant-appellant.

Joe B. Brown, U.S. Atty., Nashville, Tenn., William M. Cohen (argued), Nashville, Tenn., for plaintiff-appellee.

Before MERRITT, GUY and NORRIS, Circuit Judges.

RALPH B. GUY, Jr., Circuit Judge.

Defendant Jerry L. Word appeals his conviction on 45 counts of violating the drug laws of the United States. For the reasons given below, we affirm.

On November 13, 1985, defendant, a licensed physician, was indicted on 46 counts, including conspiracy to distribute controlled substances, distribution of controlled substances for other than a legitimate medical purpose, and attempted distribution of controlled substances for other than a legitimate medical purpose. The gravamen of the indictment and the government's proofs was that the defendant was selling prescriptions for Dilaudid, a controlled substance, for large sums of money, and that such was done for other than a legitimate medical purpose in the usual course of professional practice. Following a jury trial, defendant was convicted on 45 of the 46 counts in the indictment and was sentenced to a total term of 25 years incarceration to be followed by a three-year special parole term. Defendant raises numerous issues which we address seriatim.

## I.

Defendant first argues that the trial court erred in denying his motion to suppress evidence seized pursuant to a search

warrant during the search of his office. The warrant was executed on May 29, 1985, and various records were seized in accordance with the warrant. An evidentiary hearing was held on defendant's motion to suppress, after which the trial court rejected all of defendant's challenges to the execution of the search warrant.

The search warrant authorized the agents to seize prescription pads, correspondence, patient logs, appointment books, patient payment records, medical records, and prescription records pertaining to certain named patients, together with other records. Defendant complains that the following items seized by the agents were not within the scope of the warrant:

2 bundles of day sheets

10 day sheets from receptionist's desk

Steno notebook for sign-in by patients dating from 2/4/81 to 11/6/81

Spiral notebook for sign-in by patients dating from 6/19/81 to 10/82

Spiral notebook for sign-in by patients dating from 5/25/82 to 12/7/83

Blue spiral notebook for sign-in by patients dating from 12/8/83 to 12/18/84

Green spiral notebook for sign-in by patients dating from 12/20/84 to 5/2/85

Box daily payment sheets (encounter sheets)

36 patient hospital admission records

5 boxes patient encounter forms.

One of defendant's employees, Ms. Sherrill, testified that "day sheets" were used as a payment record in order to keep track of the patients seen by the defendant on a particular day. "Day sheets" also contain a patient diagnosis. Sign-in notebooks were identified by the witness as appointment books used to determine what patients were at the office on a particular day. Ms. Sherrill identified the hospital records as medical records. Finally, "encounter sheets" were described by the witness as a sheet used to complete a day sheet, containing information regarding billing, diagnosis, and whether a patient had been seen by the doctor on a certain day.

Based on this testimony, the trial court found that while the nomenclature assigned to these items by the defendant might differ from the description contained in the warrant, essentially these items constituted medical records, payment records, and other items as described in the warrant. We agree with the trial court that it is the substance of the document which controls, and not the label assigned to it by the defendant. Defendant has not argued that, substantively, these items differed from those described in the warrant. Consequently, the trial court did not err in refusing to suppress the evidence for this reason.

■ Defendant also complains that the search warrant failed to describe with particularity the items to be seized. Specifically, defendant argues that the warrant simply lists the type of records typically found in a physician's office and, therefore, the warrant was overbroad. As did the trial court, we must reject this argument. While the type of documents to be seized was broadly stated, we note that the warrant was limited to documents relating to certain of the defendant's patients. The fact that these documents were of the type normally found in any physician's office is immaterial. We believe that the warrant was sufficiently definite so that the agents could identify the property sought with reasonable certainty.

■ Defendant next contends that the search was tainted by an allegedly illegal search conducted by agents of the Tennessee Bureau of Investigation (TBI) pursuant to a subpoena. While federal agents were executing the federal search warrant, state agents seized certain records pursuant to a state subpoena to use as evidence in a state Medicaid investigation of defendant. The trial court found that the functions of the two sets of officers were different and that the state and federal officers were looking for two different things. The court accepted the government's assertion that the government had not seen the information seized by the TBI and would not use any of the information obtained by the TBI, at the

same time stating that the court would be observant during trial to assure that none of the information obtained by state officials was introduced. Defendant does not allege that any of the evidence seized by state officers was introduced or utilized by the government. Accordingly, there was no error.

■ Defendant contends that the affidavit in support of the search warrant fails to set forth information regarding the individuals named in the warrant which would support a finding that their records would be in the office of the defendant or that their records would evidence illegal diversion of Dilaudid. This argument is without merit. The affidavit extensively set forth a scheme of selling prescriptions for Dilaudid, some of which were sold to individuals but which were written in the name of defendant's patients. The patients' names listed in the affidavit and search warrant were those appearing on prescriptions written for Dilaudid, the prescriptions having been seized from Skelton's Pavillion Pharmacy, where the pharmacist, Andrew Skelton, admitted to filling Dilaudid prescriptions in the amount of 100 tablets for individuals who brought in three or four prescriptions at a time. Some of these individuals, as alleged in the affidavit, were known to DEA agents as being street dealers of controlled substances. Thus, probable cause existed as to the patients named in the search warrant since prescriptions had been written for Dilaudid in their names. Since these individuals were patients of the defendant, probable cause existed for believing that their medical records would be located at the defendant's office.

■ Defendant's final contention in relation to the search warrant is that the information set·forth in the warrant was stale and therefore failed to set forth probable cause that the documents seized were on the premises to be searched. The search warrant was issued on May 28, 1985. The most recent illegal sale of prescriptions alleged in the warrant occurred in January, 1985. The affidavit also set forth the re-sults of several inspections conducted at the Skelton Pharmacy, the last of which occurred on April 9, 1985, where additional prescriptions for Dilaudid, written by defendant, were seized. The events recounted in the affidavit dated from June 18, 1984 to April 29, 1985. Based on these facts, we cannot conclude that the search warrant contained stale information when the events alleged in the affidavit were of a continuing nature and the documents sought were business records prepared and kept in the ordinary course of business.

Accordingly, the trial court did not err in denying defendant's motion to suppress the evidence.

## II.

■ Defendant contends that there was no proof from which a jury could conclude that his conduct was not in the usual course of professional practice because the government presented no expert testimony to contradict the defendant's testimony that he acted properly when writing prescriptions. While this circuit has never addressed this issue, it has become well established in other circuits that expert testimony is not required in a case such as the present one.

In *United States v. Bartee*, 479 F.2d 484 (10th Cir.1973), the seminal case on this question, the defendant and the government presented conflicting testimony by doctors as to legitimate medical purpose and the usual course of professional practice. The court found:

Expert testimony from medical practitioners is of course admissible as bearing on the issue as to whether a doctor in prescribing a controlled substance is acting for a legitimate medical purpose, and the expert testimony in the instant case was to some degree, at least, in conflict. However, the jury is not bound by such expert testimony and may of course consider all of the facts and circumstances surrounding the prescribing as related by law witnesses.

*Id.* at 488.

In *United States v. Larson*, 507 F.2d 385, 387 (9th Cir.1974), the Ninth Circuit

held that expert testimony was not required in all cases. The court stated that it was following *Bartee,* and found many of the facts considered significant in *Bartee* present in *Larson.* Lay testimony showed that Larson prescribed and or distributed inordinate quantities of drugs, that he wrote more than one prescription in order to spread them out, that he charged a flat rate cash fee for each prescription, that he was familiar with street parlance for these drugs, etc.

The Fifth Circuit agreed in *United States v. Rogers,* 609 F.2d 834, 839 (5th Cir.1980), stating:

> In order for the Government to convict the appellant of counts 3, 5 and 8, it was necessary that it prove that the appellant dispensed the Valium, that he did so knowingly and willingly, and that the appellant in prescribing the Valium was acting other than for a legitimate medical purpose and in the usual course of his medical practice. To prove this, the Government does not have to present proof through the use of expert testimony. *United States v. Rosen,* 582 F.2d 1032 (5th Cir.1978); *United States v. Bartee,* 479 F.2d 484 (10th Cir.1973); *United States v. Larson,* 507 F.2d 385 (9th Cir.1974). In particular, see note 10 on page 1037 of *Rosen, supra.*

While the use of expert testimony is both permissible and useful, it is not absolutely necessary as a jury can find that a doctor prescribed controlled substances not in the usual course of his medical practice and that he was acting other than for a legitimate medical purpose from evidence received from lay witnesses surrounding the facts and circumstances of the prescriptions. *United States v. Bartee, supra,* at 488.

In *United States v. Smurthwaite,* 590 F.2d 889, 892 (10th Cir.1979), the defendant argued that because the government's expert was not familiar with defendant's practice, his testimony was insufficient to show the usual course of practice for that particular kind of specialist. The court found that it need not decide that issue because expert testimony was not essential to support a conviction.

We can conceive of situations where evidence as to the usual practice might be essential to proof of the government's case. But here there is evidence of conduct clearly outside the usual course of any professional practice. There is direct testimony that the defendant stated that he knew the purchasers intended to use the pills at parties; that fees were charged in accordance with the number of prescriptions written, rather than on an office call basis; that prescriptions were given for absent purported wives under circumstances where there was no discussion of the wife's need but only of the fact that the purported husband had not yet completed his 30–day wait since the last prescription, the time lapse necessary to have one issued in his name. Here no medical history or examination was taken, except an estimated weight was put on a card by the doctor without even asking the individual. There were conflicts, of course, between the doctor's testimony and the witnesses', but the resolution of those conflicts was for the jury. We hold there is ample evidence in the record to support the jury verdict.

The above cases indicate that while expert testimony as to "legitimate medical purpose" and "in the usual course of professional practice" may be helpful to a jury, there are cases in which the lay testimony is so clear that no expert testimony is required to determine that the defendant's actions were not for a legitimate medical purpose nor in the usual course of professional practice. We find the instant appeal to present such a case. The lay testimony clearly established that defendant prescribed great quantities of Dilaudid for large sums of money and that he dispensed these drugs at various locations. In his own testimony, defendant admitted, and does not now dispute, that he wrote prescriptions for various individuals whom he did not examine upon other individuals' representations that that person needed the drugs. There was even testimony from a party to whom he sold pills that that party

told defendant he was selling some of the pills. We must agree with the government that in no way can it be considered to be a legitimate medical practice to write prescriptions in return for sums of money ranging from $200 to $1,000 for each prescription written; to accept payment of $300 to $600 for writing prescriptions for someone who says he is selling some of the pills obtained; to give a patient an option as to what name a prescription for a powerful pain killer should be written in; to write prescriptions for powerful pain killers without ever seeing the patient, examining him, or verifying that he was in fact ill; or to write prescriptions at service stations, in a van, or in restrooms.

Accordingly, we reject defendant's contention that expert testimony was required in this case to prove that defendant's conduct was not in the usual course of professional practice. To the contrary, there was sufficient evidence introduced to show that it was not in the usual course of professional practice, and the jury was competent to make that determination.

### III.

■ Defendant next complains that the trial court erred in admitting certain testimony of Andrew Skelton relating to statements made by Maurice Goodner, under Fed.R.Evid. 801(d)(2)(E). As indicated above, Skelton was a pharmacist who frequently filled prescriptions for Dilaudid written by defendant. The government presented testimony that Maurice Goodner was paying both the defendant to write the prescriptions and Skelton to fill the prescriptions. Skelton testified that, on one occasion, Goodner requested that Skelter order a bottle of 500 Dilaudid. In return for ordering the Dilaudid, Goodner was to pay Skelton $5,000 and said that he would pay "Jerry" $5,000. Skelton also testified that he furnished Goodner with pieces of paper with the names of patients on them. Goodner had previously picked up prescriptions written in these names. It was necessary for Skelton to provide the names to Goodner purportedly because defendant did

not have access to his files at that time. After Goodner was furnished those pieces of paper, he brought prescriptions for Dilaudid to Skelton written by the defendant in those names. The pieces of paper were later found in the defendant's van. Skelton verified with the defendant certain of the prescriptions presented to him by Goodner in various patients' names. The only prescriptions Skelton filled for Dilaudid after January 1, 1985, were received from Goodner and were written by the defendant.

The defendant objects to that portion of Skelton's testimony which related that Goodner told Skelton that Goodner was furnishing names to defendant because defendant had told Goodner that he could not get to his records. Defendant submits that the testimony could not come within the coconspirator exception to Fed.R.Evid. 801 because Maurice Goodner was not a co-conspirator, and that even if Goodner was a co-conspirator, the statement was not made in furtherance of the conspiracy.

The trial judge admitted Skelton's testimony under the coconspirator exception of Fed.R.Evid. 801(d)(2)(E) subject to a later demonstration of the testimony's admissibility by the government proving, by a preponderance of the evidence, that (1) a conspiracy existed; (2) that the defendant against whom the statement was offered was a member of the conspiracy; and (3) that the statement was made in the course of and in furtherance of the conspiracy, in accordance with *United States v. Vinson*, 606 F.2d 149, 152 (6th Cir.1979), *cert. denied*, 444 U.S. 1074, 100 S.Ct. 1020, 62 L.Ed.2d 756 (1980). After the close of the government's proofs, the court found that a conspiracy existed, that the defendant was a party to that conspiracy, and that the statements admitted were made in the course of or in furtherance of the conspiracy. In denying defendant's motion for new trial, the court reiterated its finding that Mr. Goodner, even though unnamed in the indictment, was a coconspirator, and that his statements were admissible.

Other than his generalized statements that Goodner was not a co-conspirator and that the testimony was not in furtherance of the conspiracy, defendant has failed to specifically demonstrate that it was error for the court to admit Skelton's testimony. Defendant has not pointed to any testimony which would cast doubt on the trial court's conclusion, which is supported in the record, that the government proved the three necessary elements for the admission of testimony under Fed.R.Evid 801(d)(2)(E). Accordingly, we find no error.

### IV.

Defendant next claims that the government's failure to provide certain information to the defense violated *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Defense counsel requested that the government furnish him with information regarding the forgery of certain prescriptions. While furnishing defendant with some information, the government did not provide defendant with certain statements made by Brenda Skelton, the wife of pharmacist Andrew Skelton, concerning some forgeries at Skelton's Pharmacy. The government contends that this omission was the result of inadvertence. During trial, the omission was discovered and defendant was provided with a complete statement of Brenda Skelton. The next day, Brenda Skelton was called as a defense witness, and she was examined as to the forged prescriptions. Defendant contends that the withholding of this information constitutes reversible error.

■■■ In general, the principles announced in *Brady* do not apply to a tardy disclosure of exculpatory information, but to a complete failure to disclose. *United States v. Holloway*, 740 F.2d 1373, 1381 (6th Cir.1984), *cert. denied*, 469 U.S. 1021, 105 S.Ct. 440, 83 L.Ed.2d 366 (1984). If previously undisclosed evidence is disclosed, as here, during trial, no *Brady* violation occurs unless the defendant has been prejudiced by the delay in disclosure. *Id.* Defendant has failed to allege any prejudice as a result of the delayed disclosure of

Brenda Skelton's statement, and none is evident in the record. Accordingly, there was no reversible error.

### V.

■■ Defendant also complains that there was no proof introduced in the government's case in chief that defendant was a licensed physician as alleged in the indictment and, therefore, the court erred in instructing the jury that defendant was a licensed physician.

Initially, we reject defendant's contention that the government failed to prove that defendant was a licensed physician. To the contrary, defendant admitted he was a licensed physician, and, in addition, the government presented a wealth of information from which the jury could legitimately conclude that defendant was a licensed physician.

Moreover, we note that defendant failed to object to the instruction he now challenges. He is therefore precluded from assigning error on appeal. Fed.R.Crim.P. 30.

Finally, as indicated by the district court in its instruction to the jury, the fact that defendant is a licensed physician is a defense to the crime charged, and not an element of the crime. Defendant's entire defense to the crime was that he was a licensed physician who wrote the prescriptions in the usual course of his practice. Accordingly, we see no error.

### VI.

■■ Defendant next contends that the trial court erred in denying defendant the right to cross-examine two prosecution witnesses on convictions that were more than ten years old. Specifically, the court refused to allow defense counsel to cross-examine Lytle J. Allen on a 1965 conviction for assault with intent to ravish and robbery for which Allen served six years in prison and one year on parole. The court also refused to allow defense counsel to cross-examine John Moore on any convictions that occurred prior to 1966, which

apparently included a 1945 purse snatching conviction and convictions for armed robbery and burglary in 1957. Both men were cross-examined on convictions that were less than ten years old, and Moore was questioned as to a 1966 conviction for robbery with a dangerous weapon.

Initially, we would note that the trial court's disposition of this issue is entirely consistent with Fed.R.Evid. 609 which controls the admission of prior convictions to impeach a witness. Although 609(a) permits the use of felony convictions as well as those involving dishonesty or false statement, subsection (b) generally limits the use of convictions over ten years old. While the trial judge may admit convictions which are over ten years old, the court must determine that the probative value of the conviction, supported by specific facts and circumstances, substantially outweighs its prejudicial effect. Furthermore, the proponent of such evidence must give notice to the adverse party that he intends to seek admission of the evidence. Defendant has failed to allege that the appropriate notice was given.

In any event, even without such evidence, the jury was already in possession of sufficient information to make a discriminating appraisal of the witnesses' possible motives for testifying falsely in favor of the government. *United States v. Christian*, 786 F.2d 203, 213 (6th Cir.1986). Although the trial court refused to allow defendant to cross-examine Allen about his 1966 assault conviction, defendant did cross-examine Allen as to a conviction for possession of a controlled substance and a conviction for forgery. Allen was also extensively cross-examined about a plea bargain agreement he made with the government concerning charges brought against him arising out of his involvement in the Dilaudid dealing conspiracy.

In relation to Moore, although the court refused to let defendant question him about convictions occurring prior to 1966, he was cross-examined as to a 1966 conviction for robbery with a deadly weapon, 1972 convictions on three charges of for-

gery, a 1973 conviction for possession and sale of heroin, a conviction in the 1970's for attempt to commit a felony (three counts of forgery), and a conviction involving a heroin charge which was later overturned. Moore was also questioned about the immunity granted by federal officials in this case, and concerning the fact that federal authorities had assisted in securing Moore's release from state authorities when he was arrested on drug charges. Moore also admitted to receiving approximately $14,000 from the Drug Enforcement Administration for his services. In addition, Moore admitted to being a drug user, even up to the time of trial.

The trial court did not err in limiting the scope of cross-examination in accordance with Fed.R.Evid. 609, especially in light of defendant's failure to comply with the notice requirement of that rule. Further, the jury was possessed of sufficient information to appraise the witnesses' credibility. We find no error.

## VII.

■ Defendant's final contention is that the district court erred in denying his motion for new trial based on grounds of newly discovered evidence. The newly discovered evidence consisted of information that Jack Rogers was forging the defendant's signature on prescriptions and making attempts to steal the defendant's prescription pads. The trial court held a hearing on this motion prior to defendant's sentencing.

The decision whether to grant a new trial rests in the sound discretion of the trial judge. *United States v. Barlow*, 693 F.2d 954, 966 (6th Cir.1982), *cert. denied*, 461 U.S. 945, 103 S.Ct. 2124, 77 L.Ed.2d 1304 (1983). In denying defendant's motion, the trial court stated:

> [I]n making a motion for a new trial based upon newly discovered evidence, the burden is upon you to do four things: First of all, establish that the evidence was discovered only after the trial.

Secondly, that it could not have been discovered earlier with the exercise of due diligence.

Thirdly, that it is material and not merely cumulative or impeaching; and

Finally, that it would likely produce an acquittal if the case were retried.

. . . .

[I]t does not appear to me that any of this would make one particle of difference. The affidavits that you have filed talk about this man being able to forge Dr. Word's signature, but they don't specify that the forgeries were on any of the prescriptions that the indictment charges.

And furthermore, by your own admission here today, you knew about this before the trial and you made no demonstration ... that you could not have by the exercise of due diligence determined this prior to the trial.

As far as the Court is concerned, it would be merely impeaching evidence of the testimony that I have previously related in this discussion, and in addition thereto, we had the testimony of the handwriting expert who said unequivocally that these prescriptions were written by Dr. Word.

It would be merely impeaching testimony, Mr. Quillen, and, frankly, sir, the evidence in this case was overwhelming that this man was guilty. As a matter of fact, as I say, he convicted himself by his own testimony.

If it were not for all the other testimony that came into this case, he convicted himself by his own testimony. He said he wrote the prescriptions. He justified it. He attempted to justify writing these prescriptions ... You don't meet any one of the four requisites of United States versus Barlow which is the law in this circuit.

(App. 126–128). Defendant has failed to demonstrate in any manner that the trial court abused its discretion in denying his motion for new trial based on newly discovered evidence. After our review of the record, we are in agreement with the trial court's ruling on this issue.

The judgment of the district court is AFFIRMED.