*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2001 FED App. 0201P (6th Cir.)
File Name: 01a0201p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

————————————

UNITED STATES OF AMERICA,
     *Plaintiff-Appellee,*

     *v.*

THOMAS R. HARRIS (99-6224); AARON L. TAYLOR (99-6254),
     *Defendants-Appellants.*

Nos. 99-6224/6254

Appeal from the United States District Court
for the Eastern District of Tennessee at Chattanooga.
Nos. 99-00007; 99-00010—R. Allan Edgar, Chief District Judge.

Argued: January 24, 2001

Decided and Filed: June 21, 2001

Before: BATCHELDER and CLAY, Circuit Judges; POLSTER, District Judge.[*]

———————————

[*] The Honorable Dan Aaron Polster, United States District Judge for the Northern District of Ohio, sitting by designation.

1

————————————

**COUNSEL**

**ARGUED:** Rita C. LaLumia, FEDERAL DEFENDER SERVICES, Chattanooga, Tennessee, John E. Eberly, EBERLY LAW FIRM, Chattanooga, Tennessee, for Appellants. Perry H. Piper, ASSISTANT UNITED STATES ATTORNEY, Chattanooga, Tennessee, for Appellee. **ON BRIEF:** David F. Ness, FEDERAL DEFENDER SERVICES, Chattanooga, Tennessee, John E. Eberly, EBERLY LAW FIRM, Chattanooga, Tennessee, for Appellants. Perry H. Piper, ASSISTANT UNITED STATES ATTORNEY, Chattanooga, Tennessee, for Appellee.

POLSTER, D. J., delivered the opinion of the court, in which BATCHELDER, J., joined.  CLAY, J. (pp. 13-21), delivered a separate opinion concurring in part, dissenting in part.

————————————

**OPINION**

————————————

POLSTER, District Judge.  Defendants Thomas R. Harris and Aaron Taylor appeal from their convictions on charges of possession with intent to distribute crack cocaine in violation of 21 U.S.C. § 841(a)(1), claiming that the district court erred in denying their motions to suppress evidence.  For the reasons that follow, we **AFFIRM** the judgments of conviction.

## I.  BACKGROUND

During the summer of 1998, Detective Stephen Hope of the Chattanooga Police Department ("Chattanooga Police") learned from a confidential informant that a person known as "Fat Boy" had been selling crack cocaine from a home located at 1241 Poplar Street in Chattanooga, Tennessee ("the residence").  On August 11, 1998, Detective Hope sent the

confidential informant to the residence to make a controlled purchase. The confidential informant purchased one "rock" of crack cocaine from "Fat Boy" on that day. On October 8, 1998, the confidential informant returned to the residence and purchased another "rock" of crack cocaine.

On October 9, 1998, Detective Hope prepared an affidavit containing the following information and presented it to a state court judge:

I, Stephen L. Hope, hereby apply for a search warrant and make oath as follows:

1. I am a sworn Chattanooga Police Officer with the Narcotics Division, where I have been assigned to the Narcotics Division since 1996.

2. That on the [sic] 10-8-98, I received reliable information from an informant I have known for the last five months.

3. The said informant has proven to be reliable after the information said informant provided was independently corroborated by Detective Hope.

4. The said informant has provided information in the past that has lead [sic] to the arrest and conviction of individuals in violation of narcotic laws.

5. The said informant has provided information to other law enforcement officers in the past that has proven to be true and correct when independently corroborated by those other law enforcement officers.

6. The said informant has made several controlled narcotic buys for me in the last five months.

7. That said informant advised me that within the last 72 hours said informant was on the premises of said John Doe (alias), who resides in or occupies and is

in possession of the following described premises, to
wit; 1241 Poplar Street Court, Chattanooga,
Hamilton County, Tennessee.. [sic] While there said
informant saw legend and/or narcotic drugs
including Crack Cocaine, the same being on said
premises in the possession of and control of said
John Doe (alias).

Wherefore, as such officer acting in performance of my
duty in the premises I pray that the Court issue a warrant
authorizing the search of the said John Doe (alias) and
the premises herein described for said legend and/or
narcotic drugs including Crack Cocaine and that such
search be made either by day or night.

In addition to filing the affidavit, Detective Hope orally
advised the state court judge of the name and identity of the
confidential informant and of the fact that the confidential
informant had made two controlled buys at the residence.
The state court judge issued the search warrant based upon the
information presented to him. Later the same day, October 9,
1998, Detective Hope sent the confidential informant back to
the residence to attempt another controlled buy. The
confidential informant found "Fat Boy" at the residence, but
was not successful in purchasing crack cocaine. The
Chattanooga Police waited until the next week to execute the
search warrant because the confidential informant told
Detective Hope that drugs might not be found at the 1241
Poplar Street address over the weekend.

On October 13, 1998, the Chattanooga Police executed the
search warrant that had been issued four days earlier. When
they arrived at the residence, the police officers knocked on
the front door and announced their presence. After receiving
no response, the officers entered the residence. Officers
caught Defendant Taylor attempting to flee the residence
while carrying crack cocaine on his person. A detective found
Defendant Harris in a second-floor bathroom, seated on a
toilet with a pile of crack cocaine located next to him. The
detective did not knock before entering the bathroom, but had

magistrate of the informant's name and the two successful
controlled buys in the past. Under Tennessee law, issuing
magistrates may not consider evidence outside the four
corners of the affidavit in making a probable cause
determination. *See State v. Moon,* 841 S.W.2d 336, 338
(Tenn. Crim. App. 1992) ("[I]n Tennessee, probable cause to
support the issuance of the warrant must appear in the
affidavit and judicial review of the existence of probable
cause will not include looking to other evidence provided to
or known by the issuing magistrate or possessed by the
affiant."). A reasonably well-trained Tennessee law
enforcement officer should be expected to know this much.
Although this Court may still consider oral statements even if
state courts are precluded from doing so,[4] the fact that
Tennessee law precluded the issuing magistrate from
considering the detective's oral statements would make any
reliance on the magistrate's knowledge of such statements
objectively unreasonable.

For these reasons, the good faith exception would not apply
to save the fruits of what I believe to be an illegal search. I
therefore respectfully dissent.

---

[4] *See Elkins v. United States*, 364 U.S. 206 (1960)*; United States v. Wright*, 16 F.3d 1429, 1434 (6th Cir. 1994):

[I]n federal court, [the exclusionary] rule only requires the court
to exclude evidence seized in violation of the Federal
Constitution. A state may impose a rule for searches and
seizures that is more restrictive than the Fourth Amendment; that
is, the state may exclude evidence in state trials that would not
be excluded by application of the Fourth Amendment alone.
However, the state rule does not have to be applied in federal
court.

Inasmuch as "the existence of probable cause is a function of the inherent nature of the crime," *United States v. Canan*, 48 F.3d 954, 959 (6th Cir. 1995) (quotations omitted), the fact that the suspect was accused of selling rocks of easily portable and destructible cocaine base on a sporadic basis makes the existence of probable cause all the more implausible. As mentioned earlier, nothing about the affidavit or the detective's testimony before the magistrate indicated that there were ongoing drug sales on the premises so as to forgive the detective's knowledge that drugs were no longer on the premises. *Contra United States v. Word*, 806 F.2d 658, 662 (6th Cir. 1986) (holding that an affidavit containing stale information established probable cause in light of evidence that the crime was "of a continuing nature").

This Court has held that "[w]here recent information corroborates otherwise stale information, probable cause may be found." *United States v. Henson*, 848 F.2d 1374, 1381-82 (6th Cir. 1988) (quoting *Emery v. Holmes*, 824 F.2d 143, 149 (1st Cir. 1987) (internal quotations omitted)). But in the instant case, no additional information corroborated the informant's tip. Instead, the most recent information actually eviscerated any potential for probable cause. *Contra Spikes*, 158 F.3d at 924 (finding that probable cause still existed because recent events indicating an increased level of criminal activity refreshed the otherwise stale information).

The law enforcement officers therefore had no basis for a good faith belief that drugs were on the premises at the time they executed the warrant. When or whether drugs would again be on the premises was, in the absence of some additional information, a matter of pure conjecture. A reasonably well-trained officer would not rely on such speculative guesswork, especially when contemplating entering a residence, the place in which citizens have the most widely recognized expectation of privacy.

Regardless of what the detective considered to be his instinctive feeling, he could not have in good faith believed that probable cause existed simply because he informed the

shouted, "Police, warrant!" as he proceeded up the stairs to the second floor.

Both defendants filed motions to suppress evidence obtained by police during the search. Taylor's motion to suppress argued that the affidavit in support of the search warrant did not establish probable cause and that the good faith exception to the exclusionary rule should not apply because the officer knew or should have known that he did not have probable cause. Harris' motion to suppress argued that the evidence found in the bathroom should be suppressed because the detective violated Harris' legitimate expectation of privacy by entering the bathroom while he was seated on the toilet without first knocking on the closed door and announcing the purpose of entry. Although Harris did not raise lack of probable cause for the search in his motion to suppress, he subsequently joined in the motion filed by Taylor.

Following a joint evidentiary hearing, the trial court denied Taylor's motion to suppress. Although the court found that the detective's affidavit "f[ell] a little short of establishing probable cause under the Fourth Amendment," it concluded that the search fell within the good faith exception to the exclusionary rule set forth in *United States v. Leon*, 468 U.S. 897 (1984). The court also denied Harris' motion to suppress. The court's denial of that motion rested upon its finding that Harris possessed no legitimate expectation of privacy in the bathroom because he was merely a temporary visitor present in the house for the purpose of purchasing or trafficking in crack cocaine.

On August 16, 1999, Taylor and Harris entered conditional guilty pleas, admitting the factual basis for their convictions, but reserving the right to challenge the district court's denial of their motions to suppress. On appeal, both defendants contend that the district court erred in finding that the *Leon* exception applied. Harris further contends that the trial court erred in finding that he had no legitimate expectation of privacy while using a toilet in the bathroom of the residence.

## II.  DISCUSSION

### A.   Standard of Review

A district court's ruling on a motion to suppress is subject to a mixed standard of review.  The factual findings supporting the court's decision must be accepted unless they are clearly erroneous.  *United States v. King*, 227 F.3d 732, 739 (6th Cir. 2000).  The court's final determination as to the reasonableness of the search is, however, a question of law that must be reviewed de novo.  *Knox County Education Ass'n v. Knox County Board of Education*, 130 F.3d 361, 371 (6th Cir. 1998).  When reviewing the district court's denial of a motion to suppress, we consider the evidence in the light most favorable to the government.  *United States v. Garza*, 10 F.3d 1241, 1245 (6th Cir. 1993).

### B.   The Search Warrant

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause supported by Oath or affirmation . . . ."  U.S. Const. Amend. IV.  This Court has defined probable cause as "reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion."  *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990).  A finding of probable cause does not require an actual showing of criminal activity, but rather, "requires 'only a probability or substantial chance of criminal activity. . . .'"  *United States v. Smith*, 182 F.3d 473, 477 (quoting *Illinois v. Gates*, 462 U.S. 213, 244, n.13 (1983)).

In this case, the district court held that the affidavit provided by Detective Hope to the state court judge did not provide a sufficient basis for establishing probable cause for the search.  It reached this conclusion after reviewing the decision in *United States v. Allen*, 168 F.3d 293 (6th Cir. 1999), which concerned the issuance of a search warrant based upon an affidavit quite similar to the one in this case.  The affidavit in *Allen*, prepared by an officer from the same police department as Detective Hope, stated that the officer had learned from a confidential source that a person residing

The affidavit in support of the warrant was "so lacking in indicia of probable cause as to render official belief in its existence objectively unreasonable."  *Id.* at 925.  After obtaining the warrant, the detective was told by his own informant that there were no drugs on the premises in question and was advised to wait a few days before executing the warrant in the hope that drugs might be brought back onto the premises.  "Because probable cause to search is concerned with facts relating to a presently existing condition, . . . there arises the unique problem of whether the probable cause which once existed has grown stale."  *United States v. Spikes*, 158 F.3d 913, 923 (6th Cir. 1998) (citations and internal quotations omitted).  In *Sgro v. United States*, 287 U.S. 206 (1932), the Supreme Court held that whether information contained in an affidavit is stale "must be determined by the circumstances of each case."  *Id.* at 210-11.  Based upon the facts of the instant case, the information contained in the affidavit and in the detective's oral statements to the magistrate, particularly concerning the information regarding two successful controlled buys and the presence of drugs, was undoubtedly stale.[3]

---

[3]Although the staleness doctrine is usually discussed in the temporal sense, time is not the only factor that can lead to staleness of information.  This Court has previously held that in determining whether information contained in an affidavit for a search warrant is stale, the length of time between the events listed in the affidavit and the application for the warrant, while relevant, is not dispositive:

> Instead of measuring staleness solely by counting the days on a calendar, courts must also concern themselves with the following variables: the character of the crime (chance encounter in the night or regenerating conspiracy?), the criminal (nomadic or entrenched?), the thing to be seized (perishable and easily transferable or of enduring utility to its holder?), the place to be searched (mere criminal forum of convenience or secure operational base?), . . . .

*Spikes*, 158 F.3d at 923 (citation and internal quotations omitted).

the search, would not have found probable cause to issue a search warrant.[2]

As the majority points out, the confidential informant in the case at bar did not tell the detective that "Fat Boy" no longer lived at the premises. But it is equally clear that there was no basis to believe that drugs would be on the premises at the time of the subsequent search. Instead, the officers had to guess that drugs would be present. We should be loathe to allow law enforcement officers to rely upon a warrant based on out-dated information in the face of irrefutable evidence calling into question the entire basis for the issuance of the warrant.

## III.

For the same reasons articulated above, I believe that the good faith exception recognized in *United States v. Leon,* 468 U.S. 897 (1984), would not save the fruits of this otherwise illegal search. The legality of the search could not be sustained by the detective's good faith belief that the search was proper, because at the time the warrant was executed the detective had been advised, and had every reason to believe, that there were no illegal drugs on the premises.

---

[2]The majority also cites a district court case from another circuit, *United States v. Sugar*, 606 F. Supp. 1134 (S.D.N.Y. 1985), to support its holding. Needless to say, we are not bound by the decision of that court. Moreover, that case is easily distinguishable. In *Sugar*, the district court held that the affiant's failure to inform the issuing magistrate of an unsuccessful attempt to obtain drugs from the suspects did not detract from the allegations of criminal activity. But probable cause was not vitiated by the omission in that case because the other information available to the magistrate established a practice of some years, continuing in nature, of violating laws regulating the distribution of controlled substances outside the scope of medical practice. *Id.* at 1150. However, in the case at bar we are not confronted with allegations that regularly recurring criminal activity had been ongoing for several years; nor are we faced with a situation where the controlled substances were legally possessed in a place of business and expected to be on the premises at any given time.

at a certain house was in possession of cocaine. *Id*. at 296. The officer noted in the affidavit that the informant had previously provided him with reliable information about individuals engaged in criminal activities and that he had known the informant for five years. *Id.* During a hearing on the warrant, the officer disclosed the name of the informant to the magistrate. *Id.* at 297. The panel in *Allen* determined that the warrant failed to establish probable cause.

During the pendency of this appeal, this Court, sitting *en banc*, reversed the panel decision in *Allen* relied upon by the district court. 211 F.3d 970 (6th Cir.), *cert. denied*, 121 S. Ct. 251 (2000). In the *en banc* decision, we held that "where a known person, named to the magistrate, to whose reliability an officer attests with some detail, states that he has seen a particular crime and particular evidence, in the recent past, a neutral and detached magistrate may believe that evidence of a crime will be found." *Id.* at 976.

In the case at hand, Detective Hope provided the state court judge with an affidavit stating that he had known the confidential informant for five months, the informant had made several controlled narcotics buys for him during that time, and that the informant had provided reliable information in the past to him and others in the department. The affidavit further recited that the informant had provided information that led to the prosecution and conviction of individuals for violation of narcotics laws. Accordingly, the affidavit in this case provided more detail evidencing probable cause than the *Allen* affidavit, which recited the informant's value in prosecuting individuals charged in "criminal activity," and which did not recite that the informant had made recent undercover drug purchases.

When he appeared before the state court judge, Detective Hope revealed the confidential informant's identity and orally advised the judge that the informant had made two controlled

purchases of crack cocaine from the residence.[1]  Under the standard articulated in the *en banc Allen* decision, the affidavit in this case coupled with the detective's sworn testimony provided a sufficient basis for the state court judge to find, based upon the totality of the circumstances, that there was probable cause for the search.  Accordingly, the defendants' motions to suppress were properly denied. *United States v. Garza*, 10 F.3d 1241, 1245 (6th Cir. 1993) ("A district court's 'denial of a motion to suppress will be affirmed on appeal if proper for any reason[,]' even one not relied upon by the court.") (quoting *United States v. Barrett*, 890 F.2d 855, 860 (6th Cir. 1989) (superseded by statute)).

Moreover, even if there was not probable cause for the issuance of the warrant, the fruits of the search would have been admissible under *United States v. Leon*, 468 U.S. 897 (1984).  In *Leon*, the United States Supreme Court held that the Fourth Amendment exclusionary rule should not be used to bar the use of evidence obtained by officers acting in reasonable reliance on a search warrant issued by a neutral and detached magistrate that is later found to be invalid.  *Id.* The Supreme Court provided the following guideline for determining whether evidence seized through an invalid warrant should be excluded:

> In the absence of an allegation that the magistrate abandoned his detached and neutral role, suppression is appropriate only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause.

*Id.* at 926.

In this case, there is no evidence that the state court judge abandoned his detached or neutral role or that Detective Hope

---

[1] Detective Hope testified at the suppression hearing that when he appeared before the state judge on October 9, 1998, to apply for the search warrant, the state judge put Hope under oath.

First, there was a high degree of independent corroboration in *Charles* as evidenced by an undercover buy made at the defendant's residence by a known informant accompanied by an undercover law enforcement officer.  *Id.* at 260.  During this undercover buy, the defendant showed the officer and the informant a certain amount of cocaine base, which they negotiated to purchase.  But the officer later realized that the defendant had only given them half of the amount of drugs that they were shown.  In addition, the informant had indicated that the defendant was a bulk cocaine dealer, thereby raising the inference that there were still some drugs on the premises.  While making the undercover buy, the officer saw three firearms on the premises as well as the same customized Buick station wagon that the informant had previously indicated the suspect drove.  Over the next few weeks, the officer made several unsuccessful attempts to purchase drugs from the defendant.  However, the Court found that these attempts were unsuccessful because the officer was concerned for his safety.  Moreover, the officer claimed that during one of those unsuccessful attempts the defendant actually admitted to possessing cocaine.

Due to this and other corroborative evidence, the Court held that "[a]lthough under some circumstances a material omission may invalidate an otherwise valid search warrant, . . . [the officer's omission of the unsuccessful controlled buy attempts] was not material in this case." *Id.* at 264 (citing *United States v. Bonds*, 12 F.3d 540, 568 (6th Cir. 1993). However, in the case at bar, the detective's failure to inform the magistrate of the change in circumstances was material to the question of whether there would be any drugs on the premises at all.  There was virtually no corroboration at the time the warrant was issued, much less any additional corroboration once the detective learned that drugs might not be found on the premises.  Absent the type of facts at play in *Charles*, there was no reason to believe that evidence of wrongdoing would be found on the premises during a subsequent search.  I therefore believe that a well-informed magistrate, given all of the facts known immediately prior to

known to the detective prior to the search.[1] The detective was notified by his own confidential informant that no drugs were present at the time of the third attempted buy. In addition, the confidential informant told the detective that the suspect, "Fat Boy," would be leaving in a few minutes and further that drugs might not be found on the premises over the weekend. The informant provided no indication as to when "Fat Boy" would return to the premises. There was therefore no evidence that drugs would be brought back onto the premises. Faced with an unsuccessful buy, information that no drugs were present, and the fact that the suspect was leaving the premises, the detective called off the planned search. The detective and the other officers were therefore left to speculate as to whether and when drugs would actually be brought back onto the premises. At this critical juncture, whatever probable cause arguably existed had simply eviscerated. Yet four days later, the officers executed the then-outdated warrant without attempting to reestablish probable cause by personally surveilling the residence, having the informant watch the residence, or taking other measures to determine whether there was some ongoing or recurring criminal activity.

The majority contends that the failed controlled buy attempt had no bearing on the existence of probable cause at the time the warrant was executed. In support of its holding, the majority cites this Court's decision in *United States v. Charles*, 138 F.3d 257 (6th Cir. 1998), in which we considered whether an officer made deliberately or recklessly false statements by omitting certain facts from an affidavit. We eventually upheld the search warrant, declining to even consider whether absent those errors the warrant would have still provided probable cause. But that case is distinguishable on several grounds, for we are presented here with a case that is virtually the factual antonym of *Charles*.

---

[1] Although the majority claims that this issue was waived, I do not believe this to be the case. Instead, the issue addressed in this section was necessarily involved in the challenge to the issuance of the warrant.

was dishonest or reckless in preparing the affidavit. Nor is there reason to believe that a reasonably well trained police officer would not have believed that there was probable cause to search the home. Detective Hope received information about drug-related activities at 1241 Poplar Street from a confidential informant he had known for five months and who had provided reliable information in the past. Unlike the officer in *Allen*, Detective Hope corroborated the informant's tip prior to seeking a warrant by arranging for two controlled purchases from the address. Detective Hope included most of this information in his affidavit and provided additional sworn testimony at the hearing on the warrant. Under these circumstances, a reasonable police officer, even one who was operating under the since vacated *Allen* decision, would have concluded that there was probable cause to search the residence.

On appeal, Defendant Taylor argues that a reasonable officer would no longer have believed that there was probable cause for the search because the confidential informant failed to purchase drugs at the residence on the day the warrant was issued and officers waited four days before executing the warrant. This argument was not raised below, and is therefore waived. *See, e.g., J.C. Wycoff & Associates, Inc. v. Standard Fire Ins. Co.*, 936 F.2d 1474, 1488 (6th Cir. 1991) ("Issues not presented to the district court but raised for the first time on appeal are not properly before the court."). In any event, the inability of the confidential informant to make a third controlled purchase of crack cocaine and the four-day delay in the execution of the warrant are of little consequence given the prior controlled drug purchases and the continuing presence of "Fat Boy" at the residence. *See, e.g., United States v. Word*, 806 F.2d 658, 662 (6th Cir. 1986) (probable cause for search existed despite passage of four months since last documented drug sale and twenty-nine day gap between last suspicious event recounted in affidavit and execution of search warrant); *United States v. Spikes*, 158 F.3d 913, 923 (6th Cir. 1998), *cert. denied*, 525 U.S. 1086 (1999) (trial court properly denied motion to suppress even though some of the events included in the affidavit occurred four years ago and

officer did not apply for warrant until ten days after discovery of drug trafficking paraphernalia in trash of residence); *United States v. Fisher*, 137 F.3d 1158, 1164 (9th Cir. 1998) ("[E]vidence of a criminal business operating at a particular location in the not-so-distant past may reasonably give rise to a belief that a search of the location would yield further evidence.").

This case is no different than it would have been had Officer Hope sent the informant into the residence at 1241 Poplar Street on three occasions prior to applying for the search warrant and the informant had been successful in purchasing drugs on only two of the occasions. Probable cause is not defeated simply because an informant was unable to purchase drugs on one occasion prior to the execution of the search warrant. *See, e.g., United States v. Charles*, 138 F.3d 257, 263 (6th Cir. 1998) (omission from search warrant affidavit that law enforcement officer made several unsuccessful attempts to purchase drugs from subject does not make the affidavit false or defeat probable cause); *United States v. Sugar*, 606 F. Supp. 1134, 1150-51 (S.D.N.Y. 1985) (probable cause not vitiated by failure of officer to inform magistrate that undercover agent had been unsuccessful in attempt to obtain drug from defendants). It is not as if the informant reported to Officer Hope that "Fat Boy" no longer lived at 1241 Poplar Street, or that the drug operation had ceased. The informant simply told Officer Hope that drugs might not be found over the weekend.

For the above reasons, we hold that there was probable cause for the issuance of the search warrant, and further, that the district court did not err in finding that the *Leon* exception would apply even in the absence of a warrant founded on probable cause.

## C.   Expectation of Privacy in Bathroom

Defendant Harris has conceded that he was merely a casual (non-overnight) visitor at 1241 Poplar Street when the search was executed. Accordingly, his only basis for suppressing the fruits of the search is his claim that he had a legitimate

premises. While at least two controlled buys at the residence resulted in the purchase of controlled substances, these transactions took place approximately two months apart. There is no indication that the detective's testimony before the magistrate discussed the unexplained time gap between these two purchases. Instead of indicating ongoing drug sales, these two transactions seem to indicate sporadic drug activity that could just as easily have taken place outside of the residence, especially absent some allegation or evidence that drugs were being held at the premises for sale. Even more troubling is the detective's subsequent testimony that the controlled buys were not monitored by the police in any way. The detective admitted that he had not informed the magistrate of this fact either in the affidavit or through testimony. In fact, the detective even admitted that he was not able to verify whether the confidential informant had actually entered the premises for which the search warrant was later obtained. These facts fall woefully short of establishing any legitimate corroborative effort.

Affidavits must be judged based on the totality of "the circumstances" and answer "the commonsense, practical question [of] whether there is 'probable cause' to believe that contraband or evidence is located in a particular place." *Illinois v. Gates*, 462 U.S. 213, 230 (1983). "As presented, the combined boilerplate language and [oral testimony] provide few, if any, particularized facts of an incriminating nature and little more than conclusory statements of affiant's belief that probable cause existed regarding criminal activity." *Weaver*, 99 F.3d at 1379. I therefore believe a proper analysis would not lead to a finding of probable cause.

## II.

Although the affidavit and supporting testimony fail to establish probable cause even under *Allen*, I believe that any probable cause that may have existed at the time the warrant was issued was subsequently vitiated by the third controlled buy that yielded no contraband and the additional evidence

informant in that case provided a tip based on hearsay and was sent into the defendant's home with $100 to make a controlled buy. The informant made a successful buy of a half-ounce of marijuana from the defendant. The informant then told the police, without foundation, that he believed the defendant was growing marijuana at his home. The officers prepared an affidavit indicating that the informant was known to be reliable because he provided information about drug activity in the past and had observed marijuana in the defendant's home. The informant was unnamed in the affidavit, but his identity was revealed to the magistrate through sworn testimony. In finding that no probable cause existed to issue the warrant, the Court noted that there was no reason to believe that any of the drugs previously observed by the informant would be on the premises at the time of a search. Crucial to this point was the fact that the affidavit failed to mention the quantity of drugs observed or that the drugs were present for purposes of distribution. *Id.* at 1378. In addition, there was no mention in the affidavit of the controlled buy, making impossible an inference of ongoing or continuing drug sales.

Similarly, in the case at bar the issuing magistrate had no reason to presume that evidence of wrongdoing would be on the premises at the time of the execution of a search warrant. The informant merely stated that he had seen drugs, including crack cocaine, on the premises within the past 72 hours. The affidavit contained no mention, precise or otherwise, of the quantity of drugs observed. In fact, the affidavit did not even allege that there was a quantity of drugs still on the premises or that they were being held there for sale. As far as the magistrate knew, the drugs observed were the same drugs purchased by the informant. In addition, the confidential informant failed to state why he believed this suspect resided at or was in control of the premises in question.

Even when supplemented by the detective's oral testimony before the issuing magistrate regarding the controlled buys, the affidavit still fails to establish probable cause to believe that evidence of wrong-doing would be discovered on the

expectation of privacy while using the bathroom during the search, a contention rejected by the district court.

A person who claims that his Fourth Amendment rights were violated by an unreasonable search must establish that he or she had a subjective expectation of privacy in the premises searched and that society would recognize his or her expectation as legitimate. *Minnesota v. Carter*, 119 S. Ct. 469, 472 (1998). In determining whether an individual has a legitimate expectation of privacy, we look to the nature of the individual's ties to the property. *Id.* at 473. Although an overnight guest may possess a legitimate expectation of privacy in a residence being searched, a temporary visitor to a residence may claim no such protection. *Id.* This is particularly true where, as here, the person seeking the protections of the Fourth Amendment was on the premises for the sole purpose of engaging in drug-related business transactions. *Id.*

Harris attempts to circumvent the difficulties of establishing that he had a legitimate expectation of privacy in the residence by focusing on the fact that he was using a bathroom at the time of the raid. Citing *United States v. Delaney*, 52 F.3d 182 (8th Cir. 1995) and *Kroehler v. Scott*, 391 F. Supp. 1114 (E.D. Pa. 1975), Harris contends that he possessed an objectively reasonable expectation of privacy because he was using the bathroom of the residence and that as a result, police should have knocked on the door of the bathroom before entering. The cases cited by Harris offer little support for his position.

In *Delaney*, the Eighth Circuit Court of Appeals recognized that an occupant of a stall in a public restroom may have a reasonable expectation of privacy against clandestine police surveillance, but rejected the privacy claim of a defendant who police observed in a restroom stall during the course of "a lawful investigative stop." 52 F.3d at 188. *Kroehler* stands for essentially the same proposition recognized by the court in *Delaney* — an individual who is using a public restroom has a privacy interest in being free of police

surveillance conducted without a warrant or probable cause that would justify a warrant. 391 F.3d at 1114. Neither case even remotely suggests that officers executing a search warrant should knock and announce their presence before opening an interior door behind which there may be a bathroom.

In this case, police were not engaging in clandestine surveillance of a public restroom, but instead were executing a search warrant at a private residence known as a center of drug trafficking activity. Extending the "knock and announce" rule to any interior door that might have a bathroom behind it would far exceed the requirements of the Fourth Amendment and would substantially hinder law enforcement efforts. *See, e.g.*, *United States v. Spikes*, 158 F.3d 913, 926 (6th Cir. 1998) (officers who entered home 15 to 30 seconds after knocking and announcing their presence did not violate Fourth Amendment where additional delay may have enabled drug traffickers to destroy evidence and take additional steps to defend themselves and their drugs). The bathroom is the obvious place to retreat in order to flush drugs or other contraband down the toilet, and it would be absurd to require law enforcement officers searching a residence for drugs to delay searching a bathroom that they could tell was occupied. Accordingly, we hold that the district court did not err in concluding that Harris possessed no legitimate expectation of privacy in the bathroom of the residence.

## III.  CONCLUSION

For the reasons stated above, we **AFFIRM** the district court's denial of the defendants' motions to suppress.

## CONCURRING IN PART, DISSENTING IN PART

CLAY, Circuit Judge, concurring in part and dissenting in part. Although I concur in the majority's holding that Defendant Harris lacks standing to assert a Fourth Amendment challenge, there are two bases upon which I believe the evidence should have been suppressed with respect to Defendant Taylor. First, the affidavit in support of the search warrant was insufficient because it was a bare-bones affidavit that did not show probable cause. Second, any probable cause that could have existed at the outset was vitiated by the police officer's knowledge of irrefutable evidence that there were no longer any drugs on the premises. I therefore respectfully dissent.

### I.

Although the majority finds that probable cause existed under this Court's weakened probable cause requirements of its *en banc* opinion in *United States v. Allen*, 211 F.3d 970 (6th Cir.), *cert denied*, 121 S. Ct. 251 (2000), I am unpersuaded. The affidavit in support of the warrant in this case, restated in its entirety in the majority opinion, is a classic example of an inadequate affidavit. The affiant in *Allen* at least was able to identify the suspect who was known by his nickname or alias, "Red Dog." In the instant case, the affidavit did not provide any information to the magistrate regarding the identity of the suspect, known as "Fat Boy," and merely referred to him as "John Doe." There was no other information contained in the affidavit sufficient to provide the magistrate issuing the warrant even a minimal degree of particularity.

In *United States v. Weaver*, 99 F.3d 1372 (1996), we reversed the district court's denial of a motion to suppress, finding that the affidavit used to obtain a warrant to search the defendant's residence for marijuana, believed to be held there in a quantity suitable for distribution, was insufficient. The